[No. D006331. Fourth Dist., Div. One. Sept. 26, 1988.]

LINDA BLILER, Plaintiff and Respondent, v.
COVENANT CONTROL COMMITTEE, Defendant and Appellant.

[No. D006332. Fourth Dist., Div. One. Sept. 26, 1988.]

DEMETRI A. LEFTERI et al., Plaintiffs and Respondents, v.
COVENANT CONTROL COMMITTEE, Defendant and Appellant.

[No. D006333. Fourth Dist., Div. One. Sept. 26, 1988.]

THOMAS ALLISON, Plaintiff and Respondent, v.
COVENANT CONTROL COMMITTEE, Defendant and Appellant.

COUNSEL

Marcelle E. Mihaila, Marilyn L. Huff, Gray, Cary, Ames & Frye and Michael D. Berlin for Defendant and Appellant.

James Warren Beall for Plaintiffs and Respondents.

OPINION

TODD, J.—The Covenant Control Committee (CCC) of the Vista Hermosa subdivision in Oceanside appeals adverse summary judgments in three actions by owners of individual residences in Vista Hermosa.[1]

The summary judgments in these actions for declaratory and injunctive relief brought under the Unruh Civil Rights Act (Civ. Code, § 51) invalidate minimum resident age restrictions (CC&R's) applicable to Vista Hermosa. Also under the judgments CCC is permanently enjoined from erecting or maintaining signs designating Vista Hermosa Units 1, 2, 3 and 4 a Senior Citizen Community, and is required to pay attorney's fees and costs. We have consolidated the appeals.

The sole issue on appeal is whether there are issues of material fact precluding the grant of summary judgment. (Code Civ. Proc., § 437c, subd. (c).) Concluding there are issues of material fact concerning whether Vista Hermosa is a senior citizen housing development within the meaning of Civil Code section 51.3, we reverse.

FACTS

In 1976 and 1977, Hermosa Housing Corporation (Hermosa) developed the 436 unit Vista Hermosa subdivision in Oceanside. The project consists of duplexes, called twin homes, which have no lot line setbacks. The twin

---

[1] Plaintiffs in the three actions are Linda Bliler (D006331; Sup. Ct. No. N35175), Demetri A. Lefteri and Harieta Litos (D006332; Sup. Ct. No. N35176) and Thomas Allison (D006333; Sup. Ct. No. N33355). We refer to plaintiffs as the "residents."

The Vista Hermosa subdivision is more particularly described in three of the actions as Lots 111 through 220 inclusive of Vista Hermosa Unit No. 2 in the City of Oceanside, County of San Diego, State of California, according to Map thereof No. 8775 filed in the Office of the County Recorder of said San Diego County, on January 16, 1978. In one of the actions the real property affected also includes Lots 331 through 436 inclusive of Hermosa Unit No. 4 in the City of Oceanside, County of San Diego, State of California, according to map thereof No. 9529 filed in the Office of the County Recorder of said San Diego County on January 17, 1980.

homes have no stairs, short driveways and small yards. According to Loran Winans, a principal of Hermosa, the zero lot line setbacks of the development required a special local zoning ordinance. According to Gary Winans, a member of CCC, the subdivision was originally developed for seniors in conformity with the City of Oceanside zoning ordinance 75.31, article 5, section 513, which provides in part: "The purpose of this section is to provide a housing alternative to the conventional single family home and condominium project for retirement-oriented communities." This ordinance was adopted at the request of Hermosa so that the twin-homes project could be built. The residents point out that Hermosa's request for a change in zoning includes the statement "[t]he proposed development of single family duplex homeownership units along with multiple-family units will provide housing for moderate income families in the area."

John Anderson, attorney for Hermosa, and Loran Winans declare that the project was developed for the purpose of providing affordable housing for active senior citizens. Original CC&R's recorded January 19, 1978, contained residence and age restrictions as follows: "If persons related by blood or marriage reside in a unit, at least one must have attained age 45 and none of such residents shall be under the age of 18. If persons unrelated by blood or marriage reside in a unit, each must have attained age 45. A sole resident of a unit shall not be under the age of 45. The number of residents in a unit shall be no more than three."

In May 1983, the California Supreme Court decided *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427], holding invalid under the Unruh Civil Rights Act a CC&R age restriction limiting residency in a condominium project to persons over the age of 18. On August 3, 1983, CCC sent all owners in Vista Hermosa a letter notifying them of the *O'Connor* decision and stating, in part: "Under current circumstances your Covenant Control Committee cannot enforce the clause in your CC & R's related to age . . . . As soon as the Governor and the legislature see fit to restore our rights in this matter we will again enforce the age restrictions."

Effective January 1, 1985, the Legislature enacted section 51.3 which, generally, permits certain enforcement of CC&R's containing age restrictions. As applicable here, the section is limited to developments that fit the definition of a "senior citizen housing development." (Civ. Code, § 51.3, subd. (c)(3).) A "senior citizen housing development" is defined as "a residential development consisting of . . . at least 35 dwelling units . . . which is developed for, or substantially rehabilitated or renovated for, senior citizens." (*Ibid.*) A "senior citizen" is a person 62 years of age or older or "55

years of age or older in a senior citizen housing development." (Civ. Code, § 51.3, subd. (c)(1).)

In 1985, Vista Hermosa, by a vote of over two-thirds of the owners, amended the CC&R's intending to comply with the age requirements of Civil Code section 51.3. The amended CC&R's were recorded March 25, 1986. They provide, in part: "At least 1 person residing in each Unit must be 55 years or older. . . . All other persons residing in such Unit must be at least 45 years of age, except the following: (1) the spouse or co-habitant . . . or (2) a person who resides with and provides a primary physical or economic support to the 'qualifying resident.' "

At the hearing on the summary judgment motion the trial court considered the declarations of Gary Winans, Loran Winans and John Anderson as well as over 90 homeowners in Vista Hermosa. Included in these declarations are many expressions of intent in connection with the nature of the subdivision as a senior citizen development.

At the request of the residents, the trial court also took judicial notice of the judgments in five cases brought earlier by CCC against homeowners alleging violation of the original age restriction of 45. In each judgment that age restriction in the CC&R's before January 1, 1985, was declared arbitrary and unenforceable as a matter of law. The request for judicial notice does not include a request to judicially notice the stipulated facts on which these five cases were tried.

On this record the trial court granted the summary judgment for the residents.

## DISCUSSION

■ *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], sets forth the pertinent rules regarding summary judgment as follows: "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].)

■ " 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' (*Lipson* v. *Superior Court, supra,* 31

Cal.3d at p. 374.) 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-439 [74 Cal.Rptr. 895, 450 P.2d 271]. '. . . [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)"

 It is clear from the declarations in this case that issues of material fact are present bearing on the question whether Vista Hermosa is a senior citizen housing development as defined in Civil Code section 51.3. Is Vista Hermosa "a residential development . . . developed for, or substantially rehabilitated or renovated for, senior citizens."? (Civ. Code, § 51.3, subd. (c)(3).) If so, Civil Code section 51.3, in conjunction with Civil Code section 51.2, authorizes enforcement of age restrictions to the extent permitted by Civil Code section 51.3, notwithstanding the Unruh Civil Rights Act.

Civil Code section 51.2, enacted contingent upon the enactment of Civil Code section 51.3, to become effective January 1, 1985,[2] provides: "(a) Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age. *Where accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, pursuant to Section 51.3 of the Civil Code.*

"(b) This section is intended to clarify the holdings in Marina Point, Ltd. v. Wolfson (1982), 30 Cal.3d 72 [721], and O'Connor v. Village Green Owners Association (1983), 33 Cal.3d 790." (Italics added.)

Civil Code section 51.3 provides in part: "(a) The Legislature finds and declares that this section is essential to establish and preserve specially designed accessible housing for senior citizens. There are senior citizens who need special living environments and services, and find that there is an inadequate supply of this type of housing in the state.

"(b) The Legislature finds and declares that different age limitations for senior citizen housing are appropriate in recognition of the size of a development in relationship to the community in which it is located.

"(c) For the purposes of this section, the following definitions apply:

---

[2] Section 2 of chapter 787 of the statute of 1984 provides: "This act shall become operative only if this bill and SB 1553 [Stats. 1984, ch. 1333, enacting Civil Code section 51.3 and amending Government Code section 65915] are both chaptered and become effective January 1, 1985."

"(1) *'Qualifying resident' or 'senior citizen' means a person* 62 years of age or older, or *55 years of age or older in a senior citizen housing development.*

"(2) *'Qualified permanent resident' means* a person who meets all of the following requirements:

"(A) Was residing with the qualifying resident or senior citizen prior to the death, hospitalization, or other prolonged absence of, or the dissolution of marriage with, the qualifying resident or senior citizen.

"(B) Was *45 years of age or older, or was a spouse, cohabitant, or person providing primary physical or economic support to the qualifying resident or senior citizen.*

"(C) Has an ownership interest in, or is in expectation of an ownership interest in, the dwelling unit within the housing development that limits occupancy, residency, or use on the basis of age.

"(3) *'Senior citizen housing development' means a residential development* consisting of at least 150 dwelling units in a standard metropolitan statistical area or at least 35 dwelling units in any other area which is *developed for, or substantially rehabilitated or renovated for, senior citizens. . . .*

". . . . . . . . . . . . . . . . . . .

"(d) The covenants, conditions, and restrictions or other documents or written policy *shall not limit occupancy, residency, or use on the basis of age more proscriptively than* to require that *one person in residence* in each dwelling unit may be *required to be a senior citizen and* that *each other resident* in the same dwelling unit may be *required to be a qualified permanent resident.*

"(e) The covenants, conditions, and restrictions or other documents or written policy shall permit temporary residency, as a guest of a senior citizen or qualified permanent resident, by a person of less than 45 years of age for periods of time, not less than 60 days in any year, which are specified in the covenants, conditions, and restrictions or other documents or written policy.

"(f) Upon the death or dissolution of marriage, or upon hospitalization, or other prolonged absence of the qualifying resident, any qualified permanent resident shall be entitled to continue his or her occupancy, residency, or use of the dwelling unit.

"(g) *The* condominium, stock cooperative, limited-equity housing cooperative, *planned development,* or multiple-family residential rental property *shall have been developed for, and initially been put to use as, housing for senior citizens,* or shall have been substantially rehabilitated or renovated for, and immediately afterward put to use as, housing for senior citizens, as provided in this section.

"The *covenants, conditions, and restrictions* or other documents or written policies *applicable to any* condominium, stock cooperative, limited-equity housing cooperative, *planned development,* or multiple-family residential property *which contained age restrictions on January 1, 1984, shall be enforceable only to the extent permitted by this section, notwithstanding lower age restrictions contained in those documents or policies.*

"*Any person who has the right to reside in, occupy, or use the housing or an unimproved lot subject to this section on January 1, 1985, shall not be deprived of the right to continue that residency, occupancy, or use as the result of the enactment of this section.*" (Amended Stats. 1985, ch. 1505, § 2, italics added.)

Residents, in support of the summary judgment motion, contend CCC cannot qualify within Civil Code section 51.3 because the property has not "been developed for, and initially been put to use as, housing for senior citizens," nor has it been "substantially rehabilitated or renovated for" senior citizen housing. (Civ. Code, § 51.3, subd. (g).) This issue is one of law, and we construe Civil Code section 51.3 de novo. (See *Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305-306 [202 Cal.Rptr. 44]; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430].)

■ We must interpret the statute in a manner to effectuate its meaning and purpose, if possible. (Code Civ. Proc., § 1859; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) The legislative purpose will be effectuated even where it is inconsistent with the strict letter of the statute. (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 430 [173 Cal.Rptr. 917].)

■ The express purpose of Civil Code section 51.3 is to establish "accessible housing for senior citizens" because "there is an inadequate supply of this type of housing in the state." This purpose is not supported by requiring all "senior citizen housing development[s]" to have been *originally* designed and developed for that purpose if, in fact, existing facilities otherwise qualify physically within the statutory purpose. Since the Legislature

recognized the shortage of senior citizen housing, it is absurd to construe the statute in a manner precluding consideration of preexisting facilities for such treatment. We decline to do so. Rather, we construe Civil Code section 51.3 to include any preexisting residential development as a "senior citizen housing development" regardless of the actual purpose for which it was originally designed or constructed as long as its physical characteristics meet the requirements of the statute. The intent to devote the property to senior citizens may be acquired after the statute took effect.

This construction is supported by other language in the statute. Housing "substantially rehabilitated or renovated for, senior citizens" may satisfy the statutory requirement of Civil Code section 51.3, without any reference to original developer intent. This illustrates the legislative intent of classifying such housing only by its physical design for comfortable and safe senior citizen living, without reference to irrelevant initial developer intent. To require rehabilitation or renovation of existing structures already ideally suited for the purpose of the statute would be absurd.

We hold original developer intent for use as senior citizen housing is not a prerequisite to a facility qualifying as a "senior citizen housing development."

■ Our second inquiry addresses the physical attributes of the Vista Hermosa subdivision. For this purpose we may adopt the standard set forth by the Supreme Court in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 742 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], footnote 10. " '[Housing p]lans should include more and wider walkways with fewer stairs, an interior and exterior designed to permit easy social contact, provision for common rooms, short distances between buildings, easy refuse collection, light maintenance and well-lighted walkways and halls. . . .' " (Quoting from *Taxpayers Ass'n of Weymouth Tp.* v. *Weymouth Tp.* (1976) 71 N.J. 249, 80 N.J. 6 [364 A.2d 1016, 1027, 83 A.L.R.3d 1051].)

Residents raise questions of fact controverting CCC's contentions Vista Hermosa satisfies all the enumerated requirements. Are there "more and wider" sidewalks? No evidence is presented on this question. Is easy social contact fostered by the Vista Hermosa design? The record reflects no provision for common rooms in the development. The record does not establish the development has "well-lighted walkways and halls."

We do not suggest that the record before us precludes Vista Hermosa from qualification as a "senior citizen housing development" within Civil Code section 51.3. We only identify factual issues which must be determined by the trial court before either party can prevail.

Certain remaining points need to be made. First, *Park Redlands Covenant Control Committee* v. *Simon* (1986) 181 Cal.App.3d 87 [226 Cal.Rptr. 199], on which residents rely, is of no aid to them. *Park Redlands* considered the validity under Civil Code section 53, not section 51.3, of an injunction enforcing a restrictive covenant limiting residency in a development to three persons each 45 years of age or older. In 1979, the owners had allowed their 31-year-old daughter and her child, as well as their 20-year-old son to live with them periodically. After a trial, the court enjoined the two adult children and grandchild of the owners from residing with them until the former had attained the age of 45 years, and further enjoined more than three persons, including the owners, from permanently or regularly residing in the owners' premises.

Important facts such as the nature of the Park Redlands development were established in *Park Redlands* after a trial. A summary judgment was not involved. The establishment of those facts by trial permitted the appellate court to conclude the 45 years of age restriction was chosen "solely" to permit the Park Redlands Covenant Control Committee to "engage in impermissible discrimination against children and families with children. (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721, 745.) [¶] . . . [P]ark Redlands is not a specialized facility for the elderly; thus, the age restriction is patently violative of the Unruh Act, and therefore unenforceable." (*Park Redlands, supra,* 181 Cal.App.3d at pp. 94, 95.)

Factual determinations such as the nature of the development are not yet made with respect to Vista Hermosa. Only the issues on such matters are so far presented here. Accordingly, *Park Redlands* furnishes no assistance to the residents, at least at this summary judgment stage.

Second, the residents' reliance on the five preceding trial court cases that went to judgment against CCC is misplaced. Only the judgments in those cases, not their stipulated facts, were judicially noticed. More important, the cases involved a state of facts and law in existence before January 1, 1985. Since the law changed effective that date, the five preceding cases do not collaterally estop CCC from litigating the issue for the first time on the basis of the intervening change in the law. (*Powers* v. *Floersheim* (1967) 256 Cal.App.2d 223, 229-230 [63 Cal.Rptr. 913].)

Third, the residents question whether the 1985 amendment to the CC&R's was legally effective because of the declaration that the vote was "over two thirds" rather than three-fourths as otherwise provided for in the CC&R's. At most, the question raises another issue of material fact as to what was the actual vote. ■ Moreover, Civil Code section 51.3 expressly authorizes enforcement of CC&R's containing age restrictions on

January 1, 1984, to the extent permitted by the section "notwithstanding lower age restrictions contained in those documents or policies." Thus, amendment of CC&R's such as those for Vista Hermosa was unnecessary for the purpose of enabling enforcement of age restrictions to the extent permitted by Civil Code section 51.3.

█ Finally, we are merely holding the summary judgment was improperly granted and reversing on that ground. We are not determining the underlying merits of the action. Accordingly, at this stage of the action it is inappropriate to address the matter of attorney's fees as CCC requests for the first time in its reply brief.

DISPOSITION

Judgments reversed.

Wiener, Acting P. J., and Haden, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.