[No. A035787. First Dist., Div. Three. Mar. 28, 1989.]

CONSUMERS UNION OF UNITED STATES, INC., Plaintiff and Appellant, v.
FISHER DEVELOPMENT, INC., et al., Defendants and Respondents.

COUNSEL

Elizabeth D. Laporte, Turner & Brorby and Nettie Y. Hoge for Plaintiff and Appellant.

Stewart Stone, Jr., Steinhart & Falconer, L. Lawrence Bernheim and Senneff, Bernheim, Emery & Kelly for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Consumers Union of United States, Inc., appeals[1] from a judgment of dismissal by the Sonoma County Superior Court entered after the court sustained the demurrer of respondents Fisher Development, Inc. (Fisher), and Creekside Village Homeowners Association (the Homeowners Association), without leave to amend. Because the trial court erred in sustaining the demurrer on the ground of no standing, we reverse the judgment.

I

Appellant is a nonprofit membership organization which publishes books and reports aimed at informing and educating the public on facts about consumer goods and services as well as financial matters of interest to consumers. It brought the instant lawsuit under Business and Professions Code section 17200 et seq. and the Unruh Civil Rights Act (Civ. Code, §§ 51, 51.2, 51.3 and 52, and other sections not relevant here, hereinafter referred to as the Unruh Act). The lawsuit alleges that the Creekside Village residential subdivision development (Creekside) in Sonoma County has been illegally discriminating on the basis of age and against families with children; and it seeks injunctive relief to halt such discrimination.

Creekside was developed by respondent Fisher in 1980 pursuant to permit from the County of Sonoma in an area of the county specifically zoned for planned adult or retirement communities. Currently operated and maintained by respondent Homeowners Association, Creekside consists of 313 single-family, detached, two-bedroom, two-bath homes. According to advertising literature published by Fisher, Creekside is "a planned community nestled in California's idyllic wine country, a place for adults over age 45

---

[1] California Gray Panthers, also a plaintiff and appellant, has dissolved as a state-wide organization and has abandoned its appeal.

ready to savor the best of the good life." The development covers 91 acres, a third of which consist of open spaces described as "meticulously landscaped parks and unspoiled natural areas, . . . 29 acres of parks and verdant hillsides," with a creek "lined with hiking and walking trails, tempting for brisk morning walks or leisurely sunset strolls." The development also offers a recreation center, tennis courts, a swimming pool, and an indoor-outdoor spa which all "bring the luxuries of resort-living close to home." Other amenities are advertised as being in the town of Sonoma, "minutes away by foot, bicycle or by car. . . . "

In 1981, Fisher recorded a declaration of covenants, conditions, and restrictions on Creekside which provided that no one could "occupy any part of the subject property" unless he or she had attained the age of 45 years, or else was the spouse of such a person; that no one under the age of 18 could live in any dwelling in the development except as guests for periods of time not to exceed 60 days a year; and that such "underaged guests" were limited to 2 at a given time. In 1984, in response to the decision of the California Supreme Court in *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427], and the state Legislature's amendment of the Unruh Act in Civil Code section 51.2, the Homeowners Association decided to change the occupancy restrictions at Creekside by raising the minimum age from 45 years to 55 years, and by changing the spousal exception to include a "cohabitant" or "a person who resides with and provides primary physical or economic support to" a 55-year-old resident, so long as said "cohabitant" is over the age of 18.

Appellant brought suit on December 23, 1985, alleging that Creekside failed to qualify as a "senior citizen housing development" within the meaning of Civil Code sections 51.2 and 51.3, and that it was therefore in violation of the provisions of the Unruh Act forbidding age discrimination in housing. Appellant's applications for a temporary restraining order and for a preliminary injunction to suspend respondents' enforcement of the age restrictions were denied. In denying the motion for a preliminary injunction, the trial court found on the basis of the evidence presented that Creekside "is a business establishment designed to meet the physical and social needs of senior citizens within the meaning of Civil Code Section 51.2."

Thereafter, on February 5, 1986, respondents filed a demurrer to the complaint on the grounds that appellant did not have standing to bring the suit under either the Unruh Act or the provisions of Business and Professions Code section 17200 et seq. On May 2, 1986, the trial court sustained respondents' demurrer without leave to amend. This appeal followed the dismissal of the complaint pursuant to the sustaining of the demurrer.

## II

In its complaint, appellant alleged that it had standing under Business and Professions Code section 17200 et seq. to seek injunctive relief against respondents' alleged violations of the Unruh Act. In sustaining respondents' demurrer to the complaint without leave to amend, the trial court ruled that appellant was not entitled to invoke the standing provisions of the Business and Professions Code in order to bring suit to enforce the Unruh Act because appellant was not a "person aggrieved" by the alleged unlawful discrimination, as required by the standing provisions of the Unruh Act found at Civil Code section 52, subdivision (c).  ▊  Appellant argues that this ruling was erroneous. We agree with appellant.

The Unruh Act deals generally with discrimination in accommodations and services. Civil Code section 51.2 extends the general ban on discrimination found in section 51 to discrimination on the basis of age.[2] Under Civil Code section 52, subdivision (a), actions for triple damages may be brought for specific violations of the provisions of the Unruh Act which result in actual damages to any person denied the rights set forth in the act. In addition, the statute provides that civil actions for injunctive or other preventive relief may be brought by "the Attorney General, any district attorney or city attorney, *or any person aggrieved*" where there is "a pattern or practice of resistance to the full enjoyment of any of the rights" secured by the act.[3] (Civ. Code, § 52, subd. (c), italics added.)

---

[2] Civil Code section 51 states, in pertinent part: "This section shall be known, and may be cited, as the Unruh Civil Rights Act. [¶] All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. . . ."

Civil Code section 51.2 provides: "(a) Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age. Where accommodations are designed to meet the physical and social needs of senior citizens, a business establishment may establish and preserve such housing for senior citizens, pursuant to Section 51.3 of the Civil Code. [¶] (b) This section is intended to clarify the holdings in Marina Point, Ltd. v. Wolfson (1982), 30 Cal.3d 72[ ], and O'Connor v. Village Green Owners Association (1983), 33 Cal.3d 790."

[3] Civil Code section 52, subdivision (c), provides: "(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights hereby secured, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General, any district attorney or city attorney, or any person aggrieved by the pattern or practice may bring a civil action in the appropriate court by filing with it a complaint (1) signed by the officer . . . or by the person aggrieved, (2) setting forth facts pertaining to the pattern or practice, and (3) requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or

Although appellant brought its complaint to enjoin respondents' alleged violations of the Unruh Act, it did not cite the standing provisions of that statute. Rather, it brought its action "[p]ursuant to" the provisions of Business and Professions Code section 17200 et seq., referred to as the "unfair competition statute." This act defines "unfair competition" to "mean and include unlawful, unfair or fraudulent business practice" as well as "unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) The operative language appears in section 17203, which states: "Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter . . . ."

Under Business and Professions Code section 17204, actions for such an injunction may be prosecuted by the Attorney General, any district attorney, city attorneys of cities having a population in excess of 750,000, *"or by any person acting for the interests of itself, its members or the general public."* (Italics added.) The word "person" expressly includes corporations, associations, and other organizations. (Bus. & Prof. Code, § 17201.) Finally, Business and Professions Code section 17205 provides that "[u]nless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

■ The Supreme Court has repeatedly given the broadest possible definition to the term "unfair competition." Thus, in *People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731], Justice Clark, writing for a unanimous court, stated: "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.' (Bus. & Prof. Code, § 17200.) California courts have consistently interpreted such language broadly. An 'unlawful business activity' includes ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' [Citation.] The Legislature 'intended . . . to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.' [Citation.]" *(People* v. *McKale, supra,* 25 Cal.3d at pp. 631-632.)

More recently the Supreme Court again reiterated that, as used in this statute, "[t]he term 'unfair competition' receives a broad definition. . . .

persons responsible for such pattern or practice, as he or she deems necessary to insure the full enjoyment of the rights herein described."

'Historically, the tort of unfair business competition required a *competitive* injury. However, the language of section 17200 . . . "demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his [or her] own behalf or on behalf of the public generally." [Citation.] Thus, section 17200 is not confined to anticompetitive business practice but is equally directed toward " 'the right of the *public* to protection from fraud and deceit.' " [Citation.] Furthermore, the section 17200 proscription of "unfair competition" is not restricted to deceptive or fraudulent conduct but extends to any *unlawful* business practice [citation]. The Legislature apparently intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur [citations].' [Citation.]" (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 209-210 [197 Cal.Rptr. 783, 673 P.2d 660].)

■ Respondents urge that the standing provisions of the Unruh Act are controlling here, rather than those of the unfair competition statute; and that, under the former, only aggrieved persons may bring private actions for violations of the Unruh Act such as are alleged here. They contend that the "general provisions" of the Business and Professions Code must yield in this instance to the more specific standing limitations of the Unruh Act, arguing that any other result would render the limitation in Civil Code section 52, subdivision (c), "completely meaningless." We disagree.

The courts in California have consistently upheld the right of both individual persons and organizations under the unfair competition statute to sue on behalf of the public for injunctive relief as "private attorney[s] general," even if they have not themselves been personally harmed or aggrieved. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 929 [216 Cal.Rptr. 345, 702 P.2d 503]; *Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 70-73 [164 Cal.Rptr. 279].) Thus, in upholding the standing of an individual to bring an action under Business and Professions Code section 17204 on behalf of the general public where the individual was not personally aggrieved by the allegedly illegal acts of the defendants, one Court of Appeal has stated: "[W]e read the statute as expressly authorizing the institution of action by any person on behalf of the general public. The Legislature has provided that suit may be brought by any person acting in his [or her] own behalf *or* on behalf of the general public.

"Nor is an action on behalf of the general public, prosecuted by a private attorney general, to be confused with a class action, wherein damage to the representative plaintiff is required. . . . 'An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement

action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law . . . .'
. . .

". . . ' "[T]he section demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his [or her] own behalf or on behalf of the public generally. If the Legislature had been solely concerned with protection against the evil of unfair competitive advantage, it would certainly have more narrowly circumscribed the class of persons permitted to institute such actions." ' . . .

". . . Nothing in the legislative history of this section nor in the manner in which it has been interpreted by the courts reflects an intention to narrowly circumscribe the class of persons who may seek injunction under its terms. The language of the statute authorizing an action on one's own behalf or on behalf of the general public allows the instant suit . . . ." (*Hernandez* v. *Atlantic Finance Co., supra,* 105 Cal.App.3d at pp. 72-73.)

Contrary to respondents' position, the courts have repeatedly permitted persons not personally aggrieved to bring suit for injunctive relief under the unfair competition statute on behalf of the general public, in order to enforce *other* statutes under which such parties would otherwise lack standing. Thus, in *People* v. *McKale, supra,* 25 Cal.3d 626, the District Attorney of Riverside County brought an action pursuant to the unfair competition statute against a mobilehome park seeking civil penalties and injunctive relief for claimed violations of the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) and related sections of the former Administrative Code pertaining to the operation of mobilehome parks. The Mobilehome Parks Act vested sole authority for bringing enforcement actions in the Commission on Housing and Community Development and provided no express standing to the district attorney. The defendants contended that "maintenance of a cause of action in unfair competition for violations of the Mobilehome Parks Act circumvents the specific statutory enforcement scheme provided by the act." (*Id.,* at p. 632.)

Nevertheless, the Supreme Court held that the district attorney did have standing to bring an action to enforce that act under the parallel provisions of the unfair competition statute. "We conclude that lack of express authorization for a district attorney to prosecute violations of the Mobilehome Parks Act does not preclude prosecution of an action pursuant to applicable Business and Professions Code sections for unfair competition. . . . While . . . a district attorney may prosecute civil actions only when the Legisla-

ture has specifically authorized, specific power exists in the instant case. The district attorney is expressly authorized to maintain a civil action for either injunctive relief or civil penalties for acts of unfair competition. (Bus. & Prof. Code, §§ 17204, 17206.) Business and Professions Code section 17205 also provides that remedies and penalties available in an unfair competition action are cumulative to remedies and penalties available under other state laws, unless otherwise expressly provided. Neither the Mobilehome Parks Act nor other statute expressly provides that violations of the Mobilehome Parks Act may not be prosecuted as acts of unfair competition." (*People* v. *McKale, supra,* 25 Cal.3d at p. 633.)

The Supreme Court's analysis in *McKale* is directly applicable here. Despite the fact that the Mobilehome Parks Act contained a specific standing provision expressly granting standing to a party other than the party seeking to enforce the statute, the Supreme Court upheld that party's standing to bring suit on behalf of the general public under the unfair competition statute to enforce the Mobilehome Parks Act. (*People* v. *McKale, supra,* 25 Cal.3d at p. 633.) Moreover, the Supreme Court upheld the standing provisions of the unfair competition statute in the broadest possible terms, relying on the provision in Business and Professions Code section 17205 rendering the remedies and penalties available in an unfair competition action *cumulative* to those available under other state laws, unless otherwise expressly provided. As in the case of the Mobilehome Parks Act under consideration in *McKale,* neither the Unruh Act nor any other statute expressly provides that violations of the Unruh Act may not be prosecuted as acts of unfair competition. ▪▪▪▪ The Unruh Act, like the Mobilehome Parks Act at issue in *McKale,* simply contains an express grant of standing to some persons without any provision restricting others from proceeding under the unfair competition statute.[4]

Similarly, in *Committee on Children's Television, Inc.* v. *General Foods Corp., supra,* 35 Cal.3d 197, the Supreme Court was faced with an organizational plaintiff seeking to act as a private attorney general under the unfair competition statute to enforce the Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, § 26000 et seq.), despite its lack of standing under the latter statute. The complaint charged various corporate defendants with fraudulent, misleading, and deceptive advertising in the marketing of sugared breakfast cereals. As the court noted, unlike the unfair competition

---

[4] We note that the Supreme Court's opinion in *McKale* expressly states that "[d]iscrimination in housing and business establishments . . . is clearly unlawful . . . ," citing the Unruh Act (Civ. Code, §§ 51, 51.5), and that "[s]uch unlawful business practices constitute unfair competition pursuant to Business and Professions Code section 17200." (*People* v. *McKale, supra,* 25 Cal.3d at p. 637.)

statute, the Sherman Food, Drug, and Cosmetic Law "does not expressly provide for private enforcement. The parties vigorously dispute whether a private right of action should be implied under this statute, but the question is immaterial since any unlawful business practice, including violations of the Sherman law, may be redressed by a private action charging unfair competition in violation of Business and Professions Code sections 17200 and 17203." (*Committee on Children's Television, Inc.* v. *General Foods Corp., supra,* 35 Cal.3d at pp. 210-211, fns. omitted.)

In the recent case of *Pines* v. *Tomson* (1984) 160 Cal. App.3d 370 [206 Cal.Rptr. 866], a Court of Appeal followed these Supreme Court precedents in upholding the standing of a nonaggrieved organizational plaintiff to bring a lawsuit on behalf of the general public under the unfair competition statute to enjoin discrimination in violation of the Unruh Act. Although in *Pines* the organizational plaintiff was joined by two individual aggrieved parties, the appellate court expressly found that this individual injury was *not necessary* to the plaintiffs' standing to bring suit to enforce the Unruh Act. The court reiterated that the proscription of " 'unfair competition' " in Business and Professions Code section 17200 is not confined to anticompetitive business practice but extends to any unlawful business practice "in whatever context such activity might occur. [Citations.]" (*Pines, supra,* at p. 380.) The court then held that because an action for an injunction under Business and Professions Code section 17204 may be brought by "any person acting for the interests of itself, its members or the general public," and the plaintiffs in *Pines* had alleged injury to the general public in their complaint (*Pines, supra,* at p. 380), they "had standing to bring the instant action for injunctive relief *either* on their own behalf *or* on behalf of the general public." (*Id.,* at p. 381, italics added.)[5]

---

[5] Several other cases uphold the standing of nonaggrieved plaintiffs to sue under the unfair competition statute on behalf of the general public to enforce provisions of other statutes under which they do not have standing. Thus, in *People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 32-33 [175 Cal.Rptr. 257], the court held that the unfair competition statute provided standing to the district attorney to bring an action for an injunction to enforce the minimum wage provisions of the Labor Code, even though the latter statute set out a different remedy and made no provision for the district attorney to bring suit. "The clear language of the Business and Professions Code prohibiting unfair competition authorizes filing of a complaint for unfair competition supplementary to any other provision of the law. That the Labor Code provides similar relief against unlawful labor practices cannot foreclose cumulative remedies under the Business and Professions Code if the alleged misconduct does indeed constitute an unfair business practice." (*Id.,* at p. 33.)

Similarly, in *Hernandez* v. *Atlantic Finance Co., supra,* 105 Cal.App.3d 65, the court upheld the standing of an individual woman to bring a lawsuit on behalf of the general public against a used car dealership and a finance company for alleged violations of the Rees-Levering Automobile Sales Finance Act (formerly Civ. Code, §§ 2981-2990), even though the plaintiff had not purchased an automobile from the dealer or obtained financing from the finance company, and was not personally aggrieved. The court held that the unfair competi-

Both the trial court and respondents state the position that if Business and Professions Code section 17204 could be interpreted to give standing to nonaggrieved parties to enforce the Unruh Act on behalf of the general public, the standing provisions of Civil Code section 52, subdivision (c), would be rendered meaningless. We disagree. The enforcement provisions of the unfair competition statute do not simply duplicate those of the Unruh Act, or vice versa. Civil Code section 52, subdivision (a), sets forth an action for triple damages and attorney fees on behalf of persons denied the rights provided by Civil Code section 51. Such an action may be brought only under the standing provisions of the Unruh Act; nonaggrieved plaintiffs who sue under Business and Professions Code section 17204 for injunctive relief on behalf of the general public cannot obtain such treble damages and attorney fees under Civil Code section 51, subdivision (a).

Respondents would have us interpret the Legislature's extension of standing to private citizens to obtain injunctive relief against discrimination in Civil Code section 52, subdivision (c), as constituting an implied repeal of the preexisting standing provisions of the unfair competition statute. But the latter statute specifically provides that its remedies and provisions are cumulative to those of all other state statutes, "[u]nless otherwise expressly provided . . . ." (Bus. & Prof. Code, § 17205.) The Unruh Act does *not* contain such an express statement limiting the scope of the broad standing provisions of the unfair competition statute. The Legislature must be presumed to have known of the standing provisions and remedies contained in the unfair competition statute, and the Supreme Court decisions broadly interpreting them, when it enacted Civil Code section 52, subdivision (c); had it wished to limit those provisions in the context of the Unruh Act, it could have done so expressly.

We decline to narrow the standing provisions of the unfair competition statute when the Legislature itself has failed to do so. The interpretation urged by respondents "would require us to discern an intent on the part of the Legislature that the [standing provisions of the Unruh Act contained in Civ. Code, § 52, subd. (c)] function so as to effect a repeal or at least a partial repeal of [the standing provisions of the unfair competition statute as contained in Bus. & Prof. Code, § 17204]. Generally, we will not presume the existence of such an intent in the absence of an express declaration. [Citation.] ■ Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. [Citation.] Furthermore, we must assume that when passing a statute the Legislature is aware of existing related laws and intends to

---

tion statute expressly authorized the institution of an action to seek an injunction to prevent unlawful business practices by any person on behalf of the general public. (*Id.,* at pp. 70-73.)

maintain a consistent body of rules. [Citations.] . . . '. . . . [I]t should not "be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." ' " (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 6-7 [128 Cal.Rptr. 673, 547 P.2d 449].)

■ We conclude that appellant has standing under the unfair competition statute to bring the instant action for an injunction to enforce the Unruh Act. Because the trial court's order sustaining respondents' demurrer was based on its erroneous conclusion that appellant did not have standing, it must be reversed.

### III

Appellant urges that this court provide "guidance" to the trial court on remand. It points to the denial of appellant's motion for a preliminary injunction as evidence that the trial court "demonstrated a fundamental misunderstanding of the requirements of the Unruh Act that *bona fide* senior housing be 'designed to meet the physical and social needs of senior citizens.'" However, appellant failed to appeal from the orders denying its requests for preliminary relief. Appellant's notice of appeal was filed more than six months after the denial of its requests for preliminary relief; this appeal is therefore from the judgment of dismissal entered on the order sustaining respondents' demurrer only. (Cal. Rules of Court, rule 2.) Nevertheless, because this matter must be remanded, we make the following observations in the interests of judicial economy.

Under the age discrimination provisions of the Unruh Act, certain kinds of housing projects may discriminate on the basis of age if they are "designed to meet the physical and social needs of senior citizens . . . ." (Civ. Code, § 51.2, subd. (a).) Civil Code section 51.3 sets out detailed standards for qualified "specially designed accessible" senior citizen housing. Among other things, such housing must be for "qualifying resident[s]," or "senior citizen[s]" 62 years of age or older or 55 years of age or older if living in "a senior citizen housing development." (Civ. Code, § 51.3, subds. (a), (c)(2).) A "senior citizen housing development" is defined as "a residential development consisting of at least 150 dwelling units in a standard metropolitan statistical area or at least 35 dwelling units in any other area *which is developed for, or substantially rehabilitated or renovated for, senior citizens. . . .*" (Civ. Code, § 51.3, subd. (c)(3), italics added.)

Appellant contends in its complaint that Creekside is not specially designed to meet the physical and social needs of senior citizens. Far from

having been "developed for, or substantially rehabilitated or renovated for, senior citizens," appellant argues that Creekside is really little different from an ordinary luxury housing development, with the exception of its age limitation. Appellant cites recent case authority finding that a residential development failed to qualify as senior citizen housing because of a lack of specific design features for senior citizens as defined by Civil Code section 51.3. (*Park Redlands Covenant Control Committee* v. *Simon* (1986) 181 Cal.App.3d 87, 93-95 [226 Cal.Rptr. 199].)

We do not need to address the substance of appellant's argument, and we intimate no view on the merits. However, we note that in a very recent decision, another Court of Appeal held that a case virtually "on all fours" with this one presented sufficient material issues of fact to withstand a motion for summary judgment. (*Bliler* v. *Covenant Control Com.* (1988) 205 Cal.App.3d 18, 21-29 [252 Cal.Rptr. 50].)

The judgment is reversed. Respondents shall bear costs on appeal.

White, P. J., and Merrill, J., concurred.

On April 12, 1989, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied June 21, 1989.