[Civ. No. 15237. Second Dist., Div. One. Aug. 1, 1946.]

CORA A. ENGLE, Respondent, v. EDWARD C. FARRELL et al., Appellants.

A. L. Abrahams, Wallace L. Ware, H. B. Cornell and Kenneth K. Wright for Appellants.

Haight, Trippet & Syvertson for Respondent.

DORAN, J.—The respondent instituted the present action for money had and received, to recover the full purchase price paid to the appellants for certain alleged oil lands located in Kings County, California, said action being based upon rescission for fraud. After trial before a jury a general verdict was returned against Edward C. Farrell and Margaret Farrell, husband and wife, in the sum of $36,797.04, and judgment entered thereon. Thereafter the trial court denied the defendants' motion for a new trial upon the condition that plaintiff deposit with the county clerk a deed to the lands in question with instructions to deliver such deed to the defendants upon full payment of the judgment, and that plaintiff file a stipulation consenting that the judgment be modified accordingly. Such stipulation, consent and deed were accordingly filed by the plaintiff.

The complaint charged the defendants Edward C. Farrell and Margaret Farrell with false representations to the effect that Edward C. Farrell was the owner of the land in question; that the property was good oil land which plaintiff would be able to quickly resell at a greatly increased price; that the defendants misrepresented the location of the premises, the geological structure thereof, and other facts connected therewith. The complaint further alleges that Edward C. Farrell was represented to be "a large scale oil operator" having superior knowledge; that plaintiff, a woman 65 years of age

and without business experience was induced to rely on such superior knowledge and to buy three separate parcels of alleged oil land. The first tract of 80 acres was purchased about June 20, 1938; a second 80-acre parcel being purchased shortly thereafter upon representations that the second purchase was necessary to secure ingress to and the sale of the first parcel. Thereafter plaintiff was induced to purchase an additional 160 acres of alleged "good oil land." Plaintiff alleges that the fraud was not discovered until in January, 1943, and that notice of rescission was served on or about May 21, 1943.

The record contains evidence to the effect that the property sold was not located in the Middle Dome of Kettleman Hills as represented but was in Kettleman Plains Sycline; that Edward C. Farrell was not previously the owner of the property sold to plaintiff at $110-131 per acre, but that after negotiating with plaintiff Farrell bought the land for $21-25 per acre, which fact was not communicated to the plaintiff. The deeds delivered to plaintiff were executed by Edward C. Farrell and wife Margaret Farrell, were recorded by Edward C. Farrell, and bore revenue stamps cancelled by Farrell. In the case of the two 80-acre parcels covered by one deed, these revenue stamps reflected a consideration of but $4,000, whereas plaintiff actually paid $19,230.21. As to the 160-acre parcel for which plaintiff paid $17,566.83, the cancelled revenue stamps indicated a consideration of only $9,000. Plaintiff was not furnished with policies of title insurance, and it appeared that all of the property was subject to a grazing lease about which plaintiff was not informed. Plaintiff testified that Farrell said "I would make a great deal of money. On one occasion I remember, he said I would need a suitcase to carry it in; and another instance I remember he said I would need a shovel . . . to shovel the money." In reference to appellants' assertion that representations to the effect that the land was "good oil property" were statements of opinion based on geologists' reports and hence not actionable, the record contains evidence from which a jury might conclude that Farrell did not honestly entertain such belief, and that such reports contained nothing which would justify an experienced oil man such as Farrell professed to be (20 years in the oil business in Southern California), in entertaining and expressing such a belief.

One of appellants' chief points of contention is that

"The motion of the defendant Margaret C. Farrell for a non-suit, for a directed verdict and for a new trial, should have been granted." The basis for this argument, as stated in appellants' brief, is that "Nowhere in the record does it appear that the property purchased by the plaintiff, Mrs. Engle, from Mr. Farrell, was Mrs. Farrell's separate property, nor does it appear . . . that she received any of the consideration paid. . . . Nowhere in the record does it appear that she had any knowledge of any of Edward C. Farrell's negotiations or transactions with the plaintiff." Upon these facts, appellants argue that "To hold one liable for fraud, it must be shown in legal contemplation that he *is in some way connected with it,*" citing 12 California Jurisprudence, page 775. This language, it may be noted, is used in reference to actions for fraud and deceit, and not to rescission of contracts induced by fraud. However, in the same citation occurs the following language: "One who persuades his representative to commit a fraud, or who connives at a fraud, and knowingly takes the fruits thereof, is no less guilty . . . than is his representative. And an agent who knowingly participates in a fraudulent transaction is equally responsible with his principal. Similarly, one who is not present at the time of the making of false representations but who profits by the fruits of the fraud, having sufficient knowledge of the facts to put a prudent person on inquiry, cannot evade responsibility." (12 Cal.Jur. 774.) While it is apparently true, as appellants assert, that respondent neither personally met nor had any direct business dealings with Margaret Farrell, it is clear that such facts do not necessarily constitute a defense to the present action. In arriving at the verdict against both Edward and Margaret Farrell the jury had before it evidence that these parties were husband and wife; that Margaret Farrell executed the deeds to respondent; that the land, and the purchase price received from respondent therefor, were acquired during the marriage of appellants and hence were presumably community property in which, under Civil Code, section 161a, the wife possessed a "present, existing and equal" interest. Moreover, as pointed out by respondent, "Margaret Farrell, despite her presence at the trial and her knowledge that plaintiff was seeking judgment against her, did not take the witness stand, or in any manner endeavor to deny that her husband was acting on her behalf and with her knowledge and consent in his dealings with

plaintiff. Nor did she request that any instructions be given the jury setting forth the rules applicable to the question of her liability (Rep. Tr. 538-561).'' In *Stegeman* v. *Vandeventer,* 57 Cal.App.2d 753, 758 [135 P.2d 186], a wife' was held responsible although not a direct party to the husband's fraud, and the court said: ''In the absence of all evidence to the contrary we must assume that all of the property of defendants . . . was community in which Mrs. Vandeventer had a vested interest. She signed the deed to the ten acres near Wasco which was exchanged for the Fresno County property. She signed the deed conveying that property to plaintiff. That deed bore $3.00 in revenue stamps which, under the federal law, was a representation of a selling price of $3,000. She accepted the deed conveying the Bakersfield property to her as one of the joint tenants and still retains that interest in the property. She has the benefit of the declaration of homestead which her husband placed on it. Thus she not only performed acts which were necessary to a consummation of the fraud but still retains much of the benefits growing out of it. It is well established in California that a husband or wife may act as agent for the other; that the agency may be proved by circumstantial as well as by direct evidence [citing various cases] ; . . . that it requires less evidence to establish agency in a case of this kind than in other cases . . .; that such an agency may be established by proof of ratification of acts already performed without previous authority.'' In *Conlin* v. *Coyne,* 19 Cal.App.2d 78, 89 [64 P.2d 1123], a judgment against a husband and wife for damages resulting from the caving of plaintiff's land into an excavation made on defendants' land, was affirmed although the wife had not personally participated in the excavation work, and the reviewing court commented upon the fact that ''It does not appear from the record that the latter [the wife] disclaimed knowledge of the improvement of the land.''

The appellant naturally contends that since the factual situation in the above cases does not parallel that existing in the present controversy, such decisions cannot here be deemed controlling authority. It is to be understood, however, that such cases are not here asserted to be conclusive in respect to the instant litigation; nor is any individual act on the part of Margaret Farrell hereinbefore recited, to be deemed decisive as to the wife's liability. Such facts were nevertheless before the jury, and as said in respondent's brief, ''Mrs.

Farrell's argument is really one addressed to the weight of the evidence and to the inferences which should be drawn therefrom. Such matters are reposed in the trier of the fact and both the jury and the trial judge passed upon them (the trial judge on three occasions, namely, motions for nonsuit, directed verdict, and new trial). An appellate court does not review such conclusions even though it might not agree with the result reached." (2 Cal.Jur. 918, 920.) Variously stated, the well known rule is set forth in *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 P. 800], as follows: "The finding on this, as upon other issues of fact, is conclusive on appeal, unless, reading the evidence in the light and with the inferences most favorable to the conclusion reached below, the appellate court can say that that conclusion is without substantial support in the record." The question of Mrs. Farrell's liability was squarely before the jury, and from the facts in evidence it cannot be said that there was not substantial support for the jury's inference that both the husband and the wife had participated in the fraud and enjoyed the fruits of the transaction.

The appellants also complain that the motion of both defendants for judgment on the pleadings should have been granted because it appeared on the face of the complaint that the contract for the sale of the alleged oil land had been fully performed and executed, the plaintiff having paid the full purchase price and the defendants having deeded the property purchased; that "under these circumstances an action for rescission or to enforce a rescission does not lie." This contention, however, finds no support in the provisions of the Civil Code governing rescission, section 1689 merely providing that "A party to a contract may rescind the same in the following cases only. 1. If the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." In 6 California Jurisprudence at page 389 occurs the following statement: "In some jurisdictions rescission is not allowed except for fraud, and, in others, a distinction is made between executed and executory contracts. In California the statute designates the grounds for rescission." As above noted the California statute makes no distinction between executed and executory

contracts. In the instant case it must be borne in mind that the plaintiff had no opportunity to rescind the transaction prior to delivery of the deed and payment of the consideration for the simple and unanswerable reason that prior to that time plaintiff had no knowledge that any fraud had been practiced. To deny the right of rescission merely because the perpetrator of the fraud had been able to conceal the misrepresentations until after the deed had been delivered would not only be absurd but would in effect add to section 1689 of the Civil Code, a provision which the legislators did not enact.

No case has been cited by either party which is exactly in point with the present controversy. For example, *City of Oakland* v. *California Const. Co.*, 15 Cal.2d 573, 577 [104 P.2d 30], cited by appellant, was an action by the city to recover the proceeds of a street improvement contract and involved the contractor's failure to faithfully perform a paving contract. As pointed out by the respondent, the *status quo* could not be restored and the court rightly held that ''Under such circumstances, if the contract has been completely executed, as in the present case, the injured party's remedy is an action for damages.'' The case bears no resemblance to the present factual situation. A similar statement occurs in *Bedell Engineering Co.* v. *Rouse*, 57 Cal.App.2d 734, 736 [135 P.2d 404], an action for damages involving misrepresentations made by auctioneers respecting the price at which plaintiff's property could be sold, and its subsequent sale to an innocent purchaser. Again, as respondent observes, it was impossible to place the parties *in statu quo*. Moreover, no question of rescission was involved in the Bedell case. In the present case it may be noted that no difficulty is presented in respect to restoring the *status quo*, such restoration being effectually accomplished by a repayment of plaintiff's money, and a reconveyance of the defendants' land. Likewise, cases holding that there can be no rescission where no binding contract ever existed between the parties, are not helpful. On the other hand, several California cases are at least persuasive, if not determinative, that rescission should be permitted in a case such as the present. In *Burne* v. *Lee*, 156 Cal. 221, 226 [104 P. 438], the court said: ''Now, it is well settled that when a party has been induced by fraud to enter into a contract, he may elect either to rescind the contract . . . or he may affirm the contract, retaining whatever advantage he may have acquired, and still have his

action for damages for deceit. . . . This rule is, however, subject to limitations which apply whether the contract, to which the charge of fraud is addressed, is an executed or executory contract. One of these limitations is that when a party . . . enters, after discovery of the fraud, into new arrangements . . . he is deemed to have waived any claim for damages on account of the fraud." In the present case, there were, of course, no such "new arrangements." (*Meinecke* v. *Frasier*, 69 Cal.App. 688, 702 [232 P. 499], was an action in equity for rescission of an automobile purchase on the ground of fraud, title having passed and the full purchase price having been paid. The court said: "It is argued that in cases where the contract has been fully performed, rescission will be decreed only in extreme cases, 'that nothing short of *actual fraud* or mistake will justify the court in granting the rescission of an executed contract'. . . . From the pleadings, proof and findings it seems to us that this case is based upon actual fraud and comes squarely within the provisions of the law applicable thereto. (See secs. 1689, 3406, 1572, Civ. Code.)" In other cases, such as *Bennett* v. *Lane Mortgage Co.*, 19 Cal. App.2d 515 [65 P.2d 953], and *Clauser* v. *Taylor*, 44 Cal.App. 2d 453 [112 P.2d 661], rescission has been decreed on the ground of fraud notwithstanding the fact that the contract had been completely executed, without mentioning any distinction between executed and executory contracts. In the instant case, the notice of rescission appears to have been timely, and there is no valid reason why plaintiff should be denied the relief granted by the code.

■ Appellant further contends that the court erred in attempting to modify the verdict and judgment at the hearing of defendants' motion for a new trial by ordering "that if the plaintiff within ten days . . . executes and deposits with the County Clerk a deed conveying . . . the property in question to the defendants . . . with instructions to the clerk to deliver said property to these two defendants when the judgment is paid in full; and if the plaintiff files a written stipulation that the judgment may be so modified, the Court orders that the judgment be modified accordingly and the motion for a new trial will then be denied." As hereinbefore stated, plaintiff accordingly filed the required deed and consent to such modification. Appellants' assertion that such order "had the effect of transforming this action into an action on the equity side to

enforce a rescission and restore the parties to *status quo*," is without merit. While no cases directly in point have been cited in which this particular order was involved, it appears to be standard practice in California for trial courts to "impose terms and conditions on granting or denying motions for new trial," in actions tried to a jury as well as in those tried to a court. (20 Cal.Jur. 207.) In *Secreto* v. *Carlander*, 35 Cal. App.2d 361, 364 [95 P.2d 476], as a condition to the denial of a new trial, the defendant was required to consent that plaintiff's judgment be increased from $150 to $1,200, and the court stated that "The law is established in this state" that the trial court had such power in order "to bring the amount of the verdict in conformity with the evidence. (*Adamson* v. *County of Los Angeles*, 52 Cal.App. 125, 131, 132 [198 P. 52].)" In this connection it may be noted that appellants' brief first complains because the original judgment did not contain a provision requiring respondent to reconvey the property as a condition to the relief awarded; appellants thereafter complain because the court modified the judgment in this very particular. In the instant case, the order did no violence to appellants' legal rights, but on the contrary mitigated the force of the judgment by requiring plaintiff to restore the property to appellants upon payment of the judgment. Even had error been committed in the making of such order, it was beneficial,—not prejudicial so far as appellants were concerned.

No error appearing in the record and there being substantial evidence to support the judgment against both appellants, the judgment is therefore affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied August 19, 1946, and appellants' petition for a hearing by the Supreme Court was denied September 19, 1946. Schauer, J., and Spence, J., voted for a hearing.