[No. E011844. Fourth Dist., Div. Two. Aug. 28, 1995.]

BRADLEY TIPPETT, Plaintiff and Appellant, v.
ANTHONY J. TERICH et al., Defendants and Respondents.

1518

**COUNSEL**

Cox, Castle & Nicholson and John S. Miller, Jr., for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, James H. Palmer and Barbara S. Van Ligten for Defendants and Respondents.

OPINION

**HOLLENHORST, J.**—Plaintiff brings this action as a test case to establish the right of a construction worker on public works projects to recover prevailing wages from his employer. While we agree with the plaintiff that common law contract causes of action are generally available to the employee, we find that plaintiff has not established a right to recover under the facts of this case.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Bradley Tippett was employed as a chainman on a surveying crew from September 1, 1980, through February 28, 1982, and from April 1, 1984, through October 31, 1987. His employer was To-Mac Engineering, a partnership of defendants Anthony J. Terich and John P. MacMahan.

During his employment, Mr. Tippett worked on both private and public works projects and was paid wages ranging from $7.50 per hour to $10.30 per hour. At the same time, the prevailing wage on public works projects ranged from $16.34 per hour to $26.15 per hour.

On June 8, 1989, Mr. Tippett filed suit against his employer, alleging that his oral contract of employment was breached by the payment of wages on public works projects less than the prevailing wage set by the Director of the Department of Industrial Relations. (Lab. Code, § 1720.)[1]

On November 26, 1990, Commissioner Reikes granted defendants' motion for judgment on the pleadings on grounds that section 1770 et seq. do not allow a private right of action for enforcement of the requirement to pay the prevailing rate of wages on public works projects. (§§ 1774, 1775.)

Plaintiff subsequently filed first and second amended complaints. A demurrer was sustained to a number of causes of action alleged in the first amended complaint.

■ When the case came to trial on the second amended complaint, the trial court noted the previous decision by Commissioner Reikes that there was no private right of action to enforce section 1720 et seq., asserted that the decision was the law of the case, and stated that it was concerned about

---

[1]Unless otherwise indicated, all further statutory references are to the Labor Code.

the statutes of limitations applicable to the various causes of action pled by plaintiff.[2]

Plaintiff then submitted a response in which he requested clarification of the court's ruling and made factual admissions regarding the various causes of action in the second amended complaint. Plaintiff contended, as he does here, that "he is asserting common law and non-Labor Code statutory substantive rights of action which are not 'private rights of action' under the Labor Code. Plaintiff further contends that the Labor Code right of action accorded to the Labor Commissioner in section 1775 is not an exclusive right of action preempting plaintiff's rights of action which merely use the prevailing wage as a measure of damage."

In the same document, plaintiff admitted that there was no agreement between him and his employer that he would be paid the prevailing wage amounts. Plaintiff also admitted that the contracts between the defendants and the public agency did not expressly require the defendants to pay the prevailing wage amounts. On the other causes of action, plaintiff admitted that, in order to measure the damages sought in those causes of action, the court would have to refer to the prevailing wage established pursuant to the Labor Code.

Plaintiff offered the testimony of the regional manager of the Division of Labor Standards Enforcement to the effect that each enforcement agent in this region has a workload of 400 to 600 public works projects per year, and that each project has multiple contractors, subcontractors and employees. This testimony was offered to prove that "the purportedly exclusive remedy

---

[2]The trial court erred in asserting that the decision of the commissioner established the law of the case. The law of the case is a doctrine which applies only to the prior decision of an appellate court in the same case. (See generally, *Kowis* v. *Howard* (1992) 3 Cal.4th 888, 892-893 [12 Cal.Rptr.2d 728, 838 P.2d 250]; *Wilder* v. *Whittaker Corp.* (1985) 169 Cal.App.3d 969, 972 [215 Cal.Rptr. 536]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 738, p. 707.) "It should go without saying that a ruling which erroneously overrules a demurrer is not binding on anyone. The objection may be raised again by the defendants, and the error may be corrected by the same or some different law and motion judge, by the trial judge, or by the appellate court." (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1063 [275 Cal.Rptr. 594].)

"Intermediate determinations, such as rulings on motions and interlocutory orders, are not conclusive." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 211, p. 649.) "[I]f a party seeks reconsideration of an interim ruling without a showing of newly discovered evidence, the trial court has discretion to grant or deny the motion." (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594]; *Ladd* v. *Dart Equipment Corp.* (1991) 230 Cal.App.3d 1088, 1102-1103 [281 Cal.Rptr. 813].)

Although the 1992 amendments to Code of Civil Procedure section 1008 significantly restrict the power of the court to reconsider rulings, the decision here was made in 1991.

The question, therefore, is whether the trial court was right for the wrong reasons.

of the Labor Commissioner is fundamentally inadequate to protect an employee's right to recover his wages on a prevailing wage project." No other proof was offered.

The trial court then ruled that plaintiff had no contract rights to wages measured by the prevailing wage, that plaintiff has no private right of enforcement of a wage claim under section 1720 et seq., and that the applicable statute of limitations was two years under the provision applicable to oral contracts. (Code Civ. Proc., § 339.)

After reconsideration, the trial court reaffirmed the above conclusions but modified the ruling on other grounds. Defendants then sought sanctions and attorney fees. The request was denied and judgment was entered for defendants.

Plaintiff appeals the judgment and defendants cross-appeal the denial of their motion for attorney fees.

### APPEALABILITY

■ We first examine defendants' contention that plaintiff "has waived any right to appeal the issue of whether he may assert a private right of action to recover prevailing wage." In support of their waiver argument, defendants cite cases holding that, by amending a complaint after a demurrer is sustained, plaintiff waived any error in the ruling of the trial court. (*Sheehy v. Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 540 [122 P.2d 60]; *Alhambra Transfer etc. Co. v. Muse* (1940) 41 Cal.App.2d 92, 93 [106 P.2d 63].)

This issue was raised in the most recent Supreme Court case on the prevailing wage law. In *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962 [9 Cal.Rptr.2d 92, 831 P.2d 317], the trial court sustained a demurrer to a cross-complaint on grounds that the Labor Code does not authorize an action for damages against an alleged public body. The defendant then amended the cross-complaint. The Supreme Court declined to decide whether the trial court was correct in sustaining the demurrer, saying that "[r]ather than appealing the trial court's order, the DLSE chose to amend its [cross-] complaint. By doing so, it waived its right to appeal any error in the sustaining of the first demurrer." (*Id.*, at p. 966, fn. 2; see also *Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 900 [16 Cal.Rptr.2d 675].)

This principle is inapplicable here. We agree with plaintiff that he is not appealing the sustaining of the demurrer. He is attacking the judgment

entered after the case came to trial on his second amended complaint, and he is asserting the trial court erred in sustaining defendants' objections to each cause of action in the second amended complaint.

Some confusion arises because the trial court followed the decision of Commissioner Reikes that there is no private right of action under section 1720 et seq. Defendants argue that the trial court made no independent decision on the subject, that it regarded the commissioner's decision as the law of the case, and that the issue is whether it abused its discretion in doing so.

While the trial court erred in its use of the doctrine of the law of the case (see footnote 2, *ante*), we think it clear that the trial court did adopt and apply the commissioner's decision in making its own decision. Accordingly, we review the trial court's legal decision on the undisputed facts under an independent review standard in order to determine whether common law causes of action, and the unlawful competition causes of action, were available and supported by the undisputed facts and the offer of proof. In doing so, we consider the allegations of the second amended complaint and not the earlier pleadings.

The trial court also confused the issues by failing to delineate whether it was deciding against plaintiff as a pleading issue or, as the judgment states, trial was had on a statement of agreed facts, argument and points and authorities.[3] In view of this uncertainty, we have segregated the pleading issue by discussing whether various causes of action were "available" to plaintiff. We then consider whether the undisputed facts and the offer of proof were sufficient proof of the causes of action found to be available to plaintiff.

The appeal therefore presents the questions of (1) whether the various common law causes of action asserted in the second amended complaint, as well as statutory non-Labor Code causes of action for unfair competition, were available to plaintiff; and (2) whether the available causes of action are supported by the undisputed facts and plaintiff's offer of proof.

---

[3]Plaintiff argues "that the ruling of the trial court constitutes a judgment on the pleadings *sua sponte*." He therefore argues that the proper issue is whether the trial court erred in finding a lack of standing to bring the various causes of action.

Plaintiff also notes that, despite the recitals in the ruling and the judgment, there was no trial on a statement of agreed facts because no such statement was ever submitted. He therefore argues that, even if we consider that a trial occurred on the undisputed facts and the offer of proof, the evidence was insufficient for the trial court to rule against him.

## The Prevailing Wage Law

In *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 985-986 [4 Cal.Rptr.2d 837, 824 P.2d 643], our Supreme Court provided the following overview of the prevailing wage law:

"The Legislature has declared that it is the public policy of California 'to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.' (§ 90.5, subd. (a).) The conditions of employment on construction projects financed in whole or in part by public funds are governed by the prevailing wage law. (§§ 1720-1861.)

"The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects. [Citation.] Subject to an exception not relevant here, under section 1720, subdivision (a), 'public works' include '[c]onstruction, alteration, demolition or repair work done under contract and paid for in whole or in part out of public funds . . . .' Section 1771 provides that not less than the general prevailing rate of wages must be paid to all workers employed on public works projects costing more than $1,000. Section 1770 requires the Director to make the prevailing wage rate determination, based on a method defined in section 1773.

"Section 1773 requires the public entity 'awarding any contract for public work, or otherwise undertaking any public work,' to obtain from the Director the general prevailing rate for each craft, classification or type of worker needed to execute the contract. The public entity must specify those rates in its call for bids, in bid specifications, and in the contract or, alternatively, must specify in those documents that the prevailing wage rates are on file in its principal office. (§ 1773.2.)

"A contractor for a public works project that fails to pay the prevailing rate to its workers is liable for the deficiency and is subject to a statutory penalty. (§ 1775.) Deficiencies and penalties are to be withheld by the awarding body from sums due under the contract. (§ 1727.) If the money due a contractor from an awarding body is insufficient to pay all of the imposed penalties and deficiencies, or if the public works contract does not provide for payments by the awarding body to the contractor, the DLSE is authorized to bring an action to recover the deficiencies due and penalties assessed. (§ 1775.)" (See also *Independent Roofing Contractors* v. *Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 351-352 [28 Cal.Rptr.2d 550].)

## SUPREME COURT DECISIONS

*Lusardi* and a subsequent case, *Aubry* v. *Tri-City Hospital Dist.*, *supra*, 2 Cal.4th 962, arose out of a situation in which the hospital, a public entity, desired to expand its facilities. To do so, it entered into an agreement with a private corporation. Under the terms of the agreement, the corporation appointed the public entity as its agent for all purposes on the construction project. The hospital, purportedly acting in its agency capacity, hired Lusardi to build the project without requiring Lusardi to pay the prevailing wage rates.

In *Lusardi*, Justice Kennard, writing for the majority, held "that the statutory obligation to pay the prevailing wage does not depend on the contractor's assent, that the Director may validly and constitutionally determine that a given project is for a public work, and that the doctrine of equitable estoppel does not prevent the Director from proceeding against the contractor." (*Lusardi Construction Co.* v. *Aubry*, *supra*, 1 Cal.4th 976, 982.)

On the first issue, the court rejected Lusardi's contention that the prevailing wage laws are enforceable only when a provision requiring them to be followed is contained in the contract between the public agency and the contractor. The court said: "To construe the prevailing wage law as applicable only when the contractor and the public entity have included in the contract language requiring compliance with the prevailing wage law would encourage awarding bodies and contractors to legally circumvent the law, resulting in payment of less than the prevailing wage to workers on construction projects that would otherwise be deemed public works. To allow this would reduce the prevailing wage law to merely an advisory expression of the Legislature's view." (*Lusardi Construction Co.* v. *Aubry*, *supra*, 1 Cal.4th 976, 987-988.)

In a footnote of significance here, the majority opinion states: "At least one feature in the legislative history of the statutory scheme strongly favors the conclusion that the Legislature intended the contractor's obligation to pay prevailing wages to be both statutory and contractual. Section 1781, before its repeal in 1957 (Stats. 1957, ch. 396, § 1, p. 1240), read: 'The penalties and remedies provided for in sections 1775 and 1777 shall be the exclusive penalties and remedies against any contractor or subcontractor for any violation of sections 1770 and 1777 *or* of the provisions inserted in any call for bids, specifications or contracts pursuant thereto.' (Italics added.) [¶] The Legislature's use of the disjunctive 'or' in this provision indicates that it viewed contractors and subcontractors as liable *either* for violation of their statutory obligation to pay prevailing wages, *or* for violation of their contractual stipulations to do so. The repeal of the statute does not change this,

but merely clarifies that the Legislature no longer intends the statutory remedies to be exclusive. (See Comment, *Employee Rights: Enforcement of the Public Works Prevailing Wage Obligation* (1981) 14 Loyola L.A. L.Rev. 311, 328, fn. 110.)" (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 988, fn. 3.)

The cited article presents the argument for the conclusion that section 1775 should be considered merely cumulative to the existing common law remedies, and that the courts should therefore "allow the aggrieved employees to bring a direct action against the violating contractor." (Comment, *Employee Rights: Enforcement of the Public Works Prevailing Wage Obligation, supra,* 14 Loyola L.A. L.Rev. 311, 328-329.) It argues that the direct action should be allowed on either of two theories: "First, employees may rely upon the statutes which require the contractor to pay wages at the designated scale. A cause of action may thus be framed around the contractor's breach of this statutory duty." (*Id.,* at p. 329.) "Alternatively, employees may disclaim reliance upon the prevailing wage statutes altogether, and bring a common law action premised upon breach of contract. Employees damaged as a result of the contractor's breach of the prevailing wage stipulation, contained in the public works contract, may sue to enforce the obligation as third party beneficiaries of the contract." (*Ibid.*) In addition the footnote cited by the Supreme Court concludes that "[a] reasonable inference drawn from these legislative actions is that the remedial procedures expressed in Labor Code § 1775 are not exclusive." (*Id.,* at p. 328, fn. 110.)

As noted above, the *Lusardi* majority went on to hold that Lusardi's due process rights were not violated by the director's determination that the project was a public works project and that the doctrine of equitable estoppel did not bar the director from determining that the project was a public works project.

Justice Panelli, in a concurring and dissenting opinion, dissented "from the majority's holding that the obligation of a contractor on a public works project to pay the prevailing wages arises from a statutory duty independent of any contractual agreement or notice to the contractor." (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 988, 999 (conc. and dis. opn. of Panelli, J.).[4] His view is that "[t]he statutory scheme can most reasonably be read to allow the prevailing wage laws to be enforced against the contractor only when the contract specifies that the project is a public work." (*Id.,* at p. 1000.) Justice Panelli would therefore put the compliance burden on the public entity, saying, "[t]he statutory objective of guaranteeing that workers

---

[4]Justice Panelli's opinion is especially significant because he is the author of the majority opinion in *Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962.

on public works are paid prevailing wages can be served by requiring public entities to carry out their obligations under the public works law." (*Id.*, at p. 1004.) Justice Panelli concludes: "In my view, Lusardi cannot be required to pay the difference between the prevailing wages and the wages actually paid because it did not have notice that the prevailing wage laws applied before entering into the contract to construct the expansion project and did not agree in the contract to pay those wages." (*Ibid.*) Justice Panelli thus would allow the prevailing wage laws to be enforced against the employer under a contract theory.

Justice Arabian also filed a concurring and dissenting opinion. While he agrees with the majority that ". . . the obligation to pay prevailing wage derives from statute as well as contract" he would find equitable estoppel because Lusardi relied upon the assurances and representations of the hospital district that the project was not a public works project. (*Lusardi Construction Co.* v. *Aubry, supra*, 1 Cal.4th 976, 988, 1004-1005 (conc. and dis. opn. of Arabian, J.).)

Justice Baxter joined in "Justice Panelli's explanation of why Lusardi should not be required to pay the difference between the prevailing wages and the wages Lusardi contracted to pay." (*Lusardi Construction Co.* v. *Aubry, supra*, 1 Cal.4th 976, 988, 1008 (conc. and dis. opn. of Baxter, J.).) He expressly disagrees with the reasoning of the majority, and would apply the doctrine of equitable estoppel.

Four months later, the court decided the companion case of *Aubry* v. *Tri-City Hospital Dist., supra*, 2 Cal.4th 962. The issue in that case was "whether Government Code section 815.6 provides a cause of action against a public entity that fails to comply with its obligations under the prevailing wage law." (*Id.*, at p. 964.) Justice Panelli, speaking for the majority, held that Government Code section 815.6 does not provide such a remedy, but that the Division of Labor Standards Enforcement (DLSE) should be granted leave to amend the complaint to attempt to allege a cause of action on a third party beneficiary theory. (*Id.*, at pp. 964, 971.) However, the court declined to decide whether DLSE will be successful on an amended complaint alleging such a cause of action. (*Id.*, at p. 971.)

Justice Kennard dissented. Relevant here, she unequivocally states: "A worker who is paid less than the prevailing wage by a private contractor on a public works project has the right to prosecute a claim against that contractor for the unpaid wages due under law. The worker can proceed against the contractor in an action to which no public entity need be a party . . . . " (*Aubry* v. *Tri-City Hospital Dist., supra*, 2 Cal.4th 962, 972 (dis.

opn. of Kennard, J.).) As an example, she states the situation here: "An employer and an employee agree that the employee will work for the employer at a wage less than the prevailing wage. The employee then discovers that the wage the employee has agreed to is less than that required by statute. If the employee could sue only for breach of contract, the employee would have no right of action, because the employer did not violate the contract. The employer, however, did violate the statute by paying less than the prevailing wage. In that situation, the employee has a statutory right of action." (*Id.*, at pp. 975-976 (dis. opn. of Kennard, J.).)

In response, the majority opinion offers the following footnote: "Contrary to the dissent's bald assertion that a worker may proceed directly against a contractor who has not agreed to pay the statutory prevailing wages, this court has not yet had the opportunity to decide that issue. *Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, established that the DLSE can proceed against the contractor under Labor Code section 1775 for prevailing wages even where the contractor has not agreed to pay those wages. We did not address whether the workers have a right of action against the contractor." (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 969, fn. 5.) The footnote goes on to find that, even if such an action is available, it would be an action based on contract. (*Ibid.*)

In a subsequent criminal case under section 1778, our colleagues in the Second District Court of Appeal, Division Two, said: "Read as a whole, the statutes and case law make clear that, as far as the government is concerned, the *only legal wage which may be paid to laborers on public works projects is the prevailing wage*. It is of no moment that respondents did not contract with their employees to pay the prevailing wage: the statutory requirement that workers be paid the prevailing wage 'is not limited to those workers whose employers have contractually agreed to pay the prevailing wage; it applies to "*all* workers employed on public works." ' " (*People* v. *Hwang* (1994) 25 Cal.App.4th 1168, 1177 [31 Cal.Rptr.2d 61].) The court also found that the repeal of former section 1781 in 1957 supported the conclusion that the statutory remedy was not exclusive. (*Id.*, at p. 1179.)

As should be evident from the foregoing, the primary focus of the Supreme Court debate is on the question of whether an employee on a public works project can bring an action against his contractor employer for breach of the employer's *statutory* duty to pay prevailing wages. We do not need to discuss or resolve this issue here because plaintiff disclaims reliance on a statutory cause of action and contends only that he had a right to bring various common law causes of action, and two non-Labor Code statutory causes of action for unfair competition.

## EXCLUSIVITY OF THE STATUTORY REMEDY

■ The threshold issue is defendants' argument that the statutory remedy is exclusive. Defendants contend that section 1775 is unambiguous, and that it clearly provides that only the DLSE has the right to enforce prevailing wage laws. Defendants argue by analogy to sections 1193.6 and 1194. These sections provide for enforcement of the minimum wage laws and the overtime laws by the department and by the employee, respectively. Defendants offer these sections to demonstrate that the Legislature can clearly state a joint enforcement scheme when it intends to do so.

Defendants also asked the trial court to take judicial notice of a 1988 Assembly Bill (Assem. Bill No. 3376) that was introduced to give workers the right of private action under certain circumstances. An accompanying analysis by the Senate Committee on Industrial Relations states: "[T]here is nothing in existing law giving a worker a private right of action to sue to recover wages and penalties when an employer fails to pay prevailing wages."[5] The trial court took judicial notice of these documents.[6]

Additionally, defendants argue that plaintiff's attempt to state common law causes of action to recover the prevailing wage should fail because there is no common law right to a prevailing wage. They dismiss plaintiff's offer of proof regarding the adequacy of the present statutory scheme as irrelevant.

While we agree that the offer of proof is irrelevant to the question of whether there are common law causes of action or not, we feel bound to reject defendants' arguments due to our Supreme Court's acceptance of the argument that the Legislature intended the remedies to be nonexclusive. (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 988, fn. 3.)

That argument is based on the repeal of former section 1781. That section provided that: "The penalties and remedies provided for in sections 1775 and 1777 shall be the exclusive penalties and remedies against any contractor or subcontractor for any violation of sections 1770 to 1777 or of the provisions inserted in any call for bids, specifications or contracts pursuant thereto."

---

[5]The bill was not enacted, and we find it less than persuasive. "[I]t is difficult enough to infer the intent of legislation from *successful* efforts to amend it; it is usually impossible to infer the meaning of *unsuccessful* efforts . . . . We have often observed that 'Unpassed bills, as evidences of legislative intent, have little value.' " (*Rossi* v. *Brown* (1995) 9 Cal.4th 688, 736 [38 Cal.Rptr.2d 363, 889 P.2d 557] (dis. opn. of Mosk, J.).)

[6]Curiously enough, although the trial court felt bound by Commissioner Reikes's prior rulings on other issues, it apparently did not feel bound by her prior ruling declining to take judicial notice of these documents.

(Stats. 1937, ch. 90, § 1781, p. 245.) The Supreme Court noted that the language of this section would apply both to an action based on violation of a statutory obligation and an action based on the construction contract. (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 988, fn. 3.) It then stated that the repeal of the statute "merely clarifies that the Legislature no longer intends the statutory remedies to be exclusive." (*Ibid.; People* v. *Hwang, supra,* 25 Cal.App.4th 1168, 1179.)

In addition, as noted above, Justices Kennard and Mosk have clearly stated their opinion that: "A worker who is paid less than the prevailing wage by a private contractor on a public works project has the right to prosecute a claim against that contractor for the unpaid wages due under law." (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 972 (dis. opn. of Kennard, J.).)

Justice Kennard cites section 98.3, subdivision (a). That subsection authorizes the labor commissioner to prosecute wage actions on behalf of employees who are financially unable to do so, if the commissioner believes the claims are valid and enforceable. Justice Kennard states that this means that ". . . the Legislature unmistakably contemplated that those persons who are able to employ counsel may directly prosecute actions for the collection of wages." (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 975, fn. 3.)

She also states: "We held in *Lusardi, supra,* 1 Cal.4th at pages 986-988, that the obligation of a contractor to pay the prevailing wage on a public works project arises separately from statute and from contract. The Legislature has recognized that individuals who are owed unpaid wages by employers have 'valid and enforceable' claims against those employers that they may pursue independently or that the DLSE may pursue on their behalf. (Lab. Code, § 98.3, subd. (a).) And, as we noted in *Lusardi,* the legislative history of the prevailing wage law shows that the Legislature intended remedies against the contractor for violation of the prevailing wage law to be cumulative and nonexclusive." (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 974-975, fn. omitted.)

The statute, being in derogation of common law rights, should be strictly construed. (*Primo Team, Inc.* v. *Blake Construction Co.* (1992) 3 Cal.App.4th 801, 806 [4 Cal.Rptr.2d 701].) We therefore find Justice Kennard's argument persuasive and reject defendants' initial contention that section 1775 provides an exclusive remedy for violations of the prevailing wage laws.

CONTRACT CAUSES OF ACTION

1. *Action for Breach of Contract.*

■ We find it relatively clear that an action for breach of contract was available to plaintiff. If the contractor agrees to pay the employee the

prevailing wage, and fails to do so, a direct action for breach of contract is available to the employee.

Here, the first cause of action asserted breach of an oral employment contract. It alleges an oral agreement between the employer and employee containing a provision that the employer would pay the employee wages of $16.34 per hour to $26.15 per hour for work on public works projects. Those sums are equivalent to the prevailing wage rates set by the Director of the Department of Industrial Relations.

Although the contract cause of action was available to plaintiff, we find that it was defeated by plaintiff's subsequent admission that "plaintiff and defendants did not expressly discuss these wage rates and that plaintiff and defendants did not expressly agree that wage rates in these dollar amounts would be paid for the hours worked by plaintiff on District Projects." If there was no express agreement by the contractor to pay prevailing wages, the undisputed facts and the offer of proof fail to support plaintiff's contract cause of action.

2. *Action for Breach of Contract—Third Party Beneficiary Theory.*

If the contractor and the public agency agree in their contract that employees of contractors will be paid the prevailing wage, as is usually the case, a breach of contract action based on third party beneficiary principles is available to the employee. We find it fairly self-evident that the prevailing wage law was enacted to benefit employees as a class by requiring the payment of prevailing wages on public works. (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 987; *People* v. *Hwang, supra,* 25 Cal.App.4th 1168, 1177; *O. G. Sansone Co.* v. *Department of Transportation* (1976) 55 Cal.App.3d 434, 447 [127 Cal.Rptr. 799].) Since employees working on the public works projects are the intended beneficiaries of this provision, they are third party beneficiaries of the contract between the public agency and the contractor. We therefore find no obstacle to the employee's common-law suit against the contractor on a third party beneficiary theory. (*Shell* v. *Schmidt* (1954) 126 Cal.App.2d 279, 290 [272 P.2d 82].)

On this issue, the majority opinion in *Aubry* holds that the DLSE should be allowed an opportunity to amend its complaint to state a third party beneficiary theory. (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 971.) The majority thus finds that such a theory is available in certain circumstances, although it declines to find that DLSE will be successful in its efforts. (*Ibid.*) The dissenters do not disagree.

The second cause of action here alleges a cause of action based on third party beneficiary principles. It states that defendants breached the provisions

of district contracts intended to benefit plaintiff by failing to pay wages from $16.34 per hour to $26.15 per hour.

However, this cause of action is also not supported by the undisputed facts and the offer of proof because of plaintiff's subsequent admission that "the oral and written contracts between the District and the defendants . . . do not contain an express provision stating that workers such as plaintiff on District Projects are to be paid wages ranging from $16.34 to $26.15." If the district failed to insert such a provision in its public works contracts, plaintiff could not be a third party beneficiary of the provision. Accordingly, the third party beneficiary theory fails.

3. *Contract Theories—No Express Provisions in the Contracts.*

■ A controversy arises when, as here, neither the contract between the contractor and the employee nor the contract between the contractor and the public agency contain the required prevailing wage provisions.

Plaintiff contends that the requirements of the prevailing wage law are imputed into the contracts by operation of law, and support recovery for breach of either contract under either contract theory. (*Alpha Beta Food Markets* v. *Retail Clerks* (1955) 45 Cal.2d 764 [291 P.2d 433].)

Defendants point out, however, that plaintiff went to trial on the allegations of the second amended complaint. Those allegations included specific claims that the parties agreed to pay amounts equivalent to the prevailing wages. Since plaintiff subsequently conceded that no such agreement existed, plaintiff's specific claim fails.

We therefore find that no contract causes of action are available to the employee when the prevailing wage rates, or a commitment to follow them, are not specifically stated in the contract between the contractor and employee, and/or the contract between the public agency and the contractor. (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 999 (conc. and dis. opn. of Panelli, J.).) We think that the absence of specific contractual obligations on the part of the contractor indicates that the employee has no common law contract remedies and that he or she must then proceed under a breach of statutory duty theory. (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th 962, 975-976 (dis. opn. of Kennard, J.).)

OTHER CAUSES OF ACTION

Plaintiff, in his second amended complaint, also alleged causes of action for deceit, rescission and restitution, unlawful competition, and common

counts. The trial court did not separately consider whether these causes of action were available to plaintiff. Instead, it decided that those causes of action failed because they attempted to enforce payment of the difference between the prevailing wage and the wage that was actually paid. The court's ruling on these issues was also intertwined with its consideration of the statute of limitations issues.

On appeal, plaintiff contends (1) the trial court erred by not permitting plaintiff rescission and restitution; and (2) the trial court erred by not permitting plaintiff to proceed on his unfair competition claims.

### 1. Causes of Action for Rescission and Restitution.

These causes of action rest on the theory that the consideration for the employment contract was unlawful because the wages paid were not the prevailing wage, i.e., the only lawful wage which may be paid to employees on public works projects is the prevailing wage. (§ 1774; Civ. Code, § 1667; *People* v. *Hwang, supra,* 25 Cal.App.4th 1168, 1177.) If the consideration is unlawful, the contract is void. (Civ. Code, § 1608.) Accordingly, plaintiff argues that he can rescind the contract for illegality of consideration. (Civ. Code, § 1689, subd. (b)(5).)

" 'A contract is extinguished by its rescission.' (Civ. Code, § 1688.) The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received." (*Imperial Casualty & Indemnity Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 184 [243 Cal.Rptr. 639].) " 'Rescission for illegality . . . is a remedy which enables a party, in the circumstances specified, to procure restitutionary relief with respect to a contract which was never enforceable.' " (*Runyan* v. *Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 317-318, fn. 16 [85 Cal.Rptr. 138, 466 P.2d 682, 41 A.L.R.3d 1422].)

The trial court decided that rescission was unavailable to plaintiff because plaintiff could not return his consideration for the contract, i.e., his services that had already been performed.

The trial court erred in making this determination because the rescinding employee was only required to restore "everything of value which he has received from [the other party] under the contract . . . ." (Civ. Code, § 1691, subd. (b).) The pleading itself, which offered to return the wages paid, was a sufficient notice of rescission under the statute. (Civ. Code, § 1691.) The court then "may require the party to whom such relief is

granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (Civ. Code, § 1692; *Runyan* v. *Pacific Air Industries, Inc., supra,* 2 Cal.3d 304.)

Civil Code section 1689, the basis for rescission based on unlawful consideration, does not distinguish between executory and executed contracts. (*Engle* v. *Farrell* (1946) 75 Cal.App.2d 612, 617-618 [171 P.2d 588].) Thus, as a matter of pleading, the trial court erred because a cause of action for rescission was available to plaintiff.

The question then becomes whether the available cause of action was supported by the undisputed facts and plaintiff's offer of proof. As noted above, the rescission cause of action is based on the legal theory that the contract is void because the consideration was illegal while the contract causes of action are based on the theory that a valid contract exists. However, the offer of proof admits that plaintiff and defendants did not agree to pay prevailing wages. Thus, the admission by plaintiff that there were no express agreements requiring the payment of the prevailing wage invalidates the claim that there was a contract based on illegal consideration. While plaintiff would attempt to overcome this obstacle by arguing that the only legal wage on a public works construction project is the prevailing wage, and that the prevailing wage is imputed into all such construction contracts, we have found, for the reasons discussed above, that the lack of an express contract provision means that plaintiff was relegated to a claim for breach of statutory duty.

2. *Unlawful Competition Causes of Action.*

■ Plaintiff next alleges two causes of action for unfair competition. The first is based on defendants gaining an unfair advantage over competitors by paying less than the prevailing wage and the allegedly unfair business practice of paying less than the prevailing wage. Unfair competition is a statutory non-Labor Code cause of action.[7] (Bus. & Prof. Code, § 17200 et seq.) It primarily refers to unlawful, unfair or fraudulent business practices and seeks to protect competitors as well as consumers. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 109-110 [101 Cal.Rptr. 745, 496 P.2d 817].)

The second cause of action is based on an alleged sale of plaintiff's services at less than the prevailing wage to gain an advantage over competitors. (Bus. & Prof. Code, § 17043 et seq.) This cause of action, alleged

---

[7]Since plaintiff expressly relies on the statutory unfair competition cause of action, we do not discuss the common law action for unfair competition. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1263-1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

under the unfair trade practices law, refers to sales of an article or product below cost for the purpose of injuring competitors. (Bus. & Prof. Code, § 17043; see generally, 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 591-595, pp. 534-539.)[8]

While plaintiff cites no cases applying such causes of action based on the prevailing wage law, it is possible that a cause of action would be available in some contexts. As our Supreme Court noted, both contractors and agencies have strong financial incentives not to comply with the prevailing wage law. (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th 976, 987-988.) Actions to attack stratagems which seek to circumvent the prevailing wage law should be allowed when such stratagems also have the effect of injuring competitors or the general public. For example, if the contractor bribed officials of a public agency so that they agreed that the contractor could submit a bid for work without having to pay prevailing wages, while other bidders were required to submit bids using prevailing wages, the contractor would expose itself to liability under the unfair competition law. "[T]he Legislature apparently intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur." (*Pines* v. *Tomson* (1984) 160 Cal.App.3d 370, 380 [206 Cal.Rptr. 866].)

One potential obstacle to using an unfair competition cause of action in this context is whether the employee is able to assert such a cause of action based on injury to competitors or the general public. (Bus. & Prof. Code, § 17204; see also *Southwest Marine, Inc.* v. *Triple A Mach. Shop, Inc.* (N.D.Cal. 1989) 720 F.Supp. 805 [competitor has standing]; *Consumers Union of United States, Inc.* v. *Fisher Development, Inc.* (1989) 208 Cal.App.3d 1433 [257 Cal.Rptr. 151] [consumers' group has standing] and *Pines* v. *Tomson, supra,* 160 Cal.App.3d 370, 380-381 [member of general public has standing].)

Another obstacle to using the unfair competition statutes here is that the primary remedy for unfair competition is an injunction against the unlawful practices. (Bus. & Prof. Code, §§ 17203, 17204, 17207.) The cause of action does not support a claim for damages based on the difference between the wages paid and the prevailing wage. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, 1266; *People* v. *Thomas Shelton Powers, M.D., Inc.* (1992) 2 Cal.App.4th 330, 339-344 [3 Cal.Rptr.2d 34]; *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 774 [259 Cal.Rptr. 789].)

We find it unnecessary to decide the standing and remedies issues here because we find that, even if the unfair competition causes of action were

---

[8]The unfair trade practices statute defines "article or product" to include services. (Bus. & Prof. Code, § 17024.)

available to plaintiff, plaintiff failed to offer sufficient proof of those causes of action. (Cf. *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 215 [197 Cal.Rptr. 783, 673 P.2d 660].) "[T]o state a claim under the [Unfair Business Practices Act] one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.'" (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, 1267.) Plaintiff made no such showing.

Plaintiff made no other attempt, in his offer of proof or otherwise, to present evidence establishing his right to relief on the unfair competition causes of action.[9] We therefore conclude that the trial court's entry of judgment for defendants on these causes of action was not erroneous.

### 3. *Remaining Causes of Action.*

Although plaintiff does not present argument on this point, it seems clear that common law causes of action for deceit, fraud or misrepresentation would be appropriate in some cases, and that these causes of action would be available to similar plaintiffs in some cases.

Here, however, such causes of action were defeated by the trial court's finding that neither party was aware that plaintiff should have been paid prevailing wages prior to November 1987. Plaintiff does not contest this finding. If defendants were unaware of the requirement that they pay prevailing wages, they could not have misrepresented or concealed the requirement from plaintiff. Accordingly, these causes of action must fail because they are not supported by the undisputed facts or plaintiff's offer of proof.

In addition, causes of action based on common counts would be available to persons in plaintiff's position, and would be unassailable as pleadings, although questions relating to the measure of damages would remain. (*Oliver* v. *Campbell* (1954) 43 Cal.2d 298 [273 P.2d 15]; *Moya* v. *Northrup* (1970) 10 Cal.App.3d 276 [88 Cal.Rptr. 783].)

### SUMMARY

If the contract between the employer and employee specified that the employer would pay the prevailing wage on public works projects, the

---

[9]The Unfair Practices Act is aimed primarily at horizontal price discrimination. (*Harris* v. *Capitol Records etc. Corp.* (1966) 64 Cal.2d 454 [50 Cal.Rptr. 539, 413 P.2d 139].) It is not a cause of action available to plaintiff under the circumstances here. Even if it was available, plaintiff also made no attempt to offer to prove the elements of the cause of action. For example, plaintiff did not offer any proof of an intent to injure competitors or destroy competition. (See, e.g., Bus. & Prof. Code, § 17043.)

employee would have a cause of action for breach of that contract. The contract here did not so provide.

If the contract between the public agency and the contractor required the contractor to pay the prevailing wage on public works projects, the employee would have a contract cause of action on a third party beneficiary theory. The contract here did not so provide.

If the contract between the employee and the contractor, and the contract between the contractor and the public agency do not contain provisions requiring payment of the prevailing wage, plaintiff is relegated to an action for breach of statutory duty. No breach of statutory duty was alleged here, and we do not decide if such a cause of action is available to plaintiff.

Although causes of action for rescission and restitution were available to plaintiff, we found that they conflicted with the contract causes of action, and cannot be the basis for recovery at this point. In addition the lack of express contract provisions showing illegality of consideration prevents application of rescission causes of action.

The statutory causes of action for unfair competition, while theoretically available to plaintiff, were not established by plaintiff's offer of proof here. Similarly, other causes of action and common counts would be available to plaintiffs under some circumstances, but the plaintiff here failed to offer sufficient evidence to support those causes of action.

Accordingly, we conclude that the trial court was right for the wrong reasons when it decided in favor of defendants. ■ "There is perhaps no rule of review more firmly established than the principle that a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion." (*Belair* v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].) Even though we disagree with the trial court's broad conclusion that plaintiff had no standing to bring the action, the trial court reached the right result.

## CROSS-APPEAL

■ In their cross-appeal, defendants argue that the plaintiff's first and second amended complaints were frivolous. They argue that the actions were brought in bad faith, and that the trial court abused its discretion in denying

their request for attorney fees as sanctions pursuant to Code of Civil Procedure section 128.5. Defendants also request sanctions for the filing of a frivolous appeal.[10]

Having found some merit to plaintiff's claims, we must find that the appeal was not frivolous, and that the trial court did not abuse its discretion in refusing to award attorney fees as sanctions under Code of Civil Procedure section 128.5.[11]

## DISPOSITION

The judgment is affirmed. Each party is to bear his or their own costs on appeal.

Ramirez, P. J., and McDaniel, J.,* concurred.

---

[10]In *Summers* v. *City of Cathedral City, supra,* 225 Cal.App.3d 1047, we noted our preference that requests for sanctions for allegedly frivolous appeals be made by separate motion, filed after appellant's reply brief. (*Id.,* at p. 1074, fn. 22.) Despite this preference, we have considered the issue raised in the briefs here.

[11]Although the record does not disclose that the trial court considered the factors stated in Code of Civil Procedure section 1021.1, no statement of decision was prepared and we assume that the trial court performed its duty. (Evid. Code, § 664.)

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.