Donnie CUMMINGS, et al., Plaintiffs,

v.

CENERGY INTERNATIONAL SERVICES, LLC,
Defendant.

1:17–cv–00484–LJO–JLT

United States District Court,
E.D. California.

Signed 06/15/2017

Matthew C. Helland, Daniel Solomon Brome, Nichols Kaster, LLP, San Francisco, CA, for Plaintiffs.

Nina Huerta, Locke Lord Bissell & Liddell LLP, Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

Lawrence J. O'Neill, UNITED STATES CHIEF DISTRICT JUDGE

## I. INTRODUCTION

Currently pending before the Court are Plaintiffs' Donnie Cummings, Christopher

Jones, and Charles Beaty ("Plaintiffs") motion for a preliminary injunction against Defendant Cenergy International Services, LLC ("Cenergy") and Cenergy's motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), respectively. The hearings on these motions were vacated and the motions were taken under submission. For the reasons set forth below, Cenergy's motion to dismiss is GRANTED, and Plaintiffs shall file an amended complaint within 14 days from the date of this order. Plaintiffs' motion for a preliminary injunction will be held in abeyance until after an amended complaint and responsive pleading have been filed.

## II. FACTUAL BACKGROUND

Plaintiffs performed work for the Chevron corporation as well site/drill site managers, and allege they were intentionally misclassified as independent contractors by Chevron and impermissibly denied overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs are pursuing claims in collective actions under the FLSA against Chevron in separate proceedings: *McQueen, et al. v. Chevron*, No. 4:16–cv–02089–JSW (N.D. Cal.), filed on April 20, 2016, and *Cummings v. Chevron*, JAMS Arbitration Reference No. 1100086694.

According to Plaintiffs, although Chevron controlled Plaintiffs' work and directly supervised Plaintiffs, Chevron attempted to insulate itself from FLSA liability by creating an artificially complex structure to employ Plaintiffs. (Doc. 1, ¶ 3.) Specifically, Chevron contracted with Cenergy to be an intermediary between Chevron and Plaintiffs. As a condition of working for Chevron through Cenergy, Plaintiffs and others were required to form corporate entities through which they received

wages. Plaintiff Donnie Cummings created Cummings Consulting LLC, through which he was paid for part of his employment with Chevron; Plaintiff Christopher Jones created Chris Jones DMS, LLC through which he received payments for his work from Chevron; and Plaintiff Charles Beaty created Drilling Consultants, Inc. through which he received payments for his work for Chevron. (Doc. 1, ¶¶ 9–11.)

Through these newly formed corporate entities, Plaintiffs entered into Master Service Agreements ("MSAs") with Cenergy under which they agreed (1) to be classified as independent contractors and not employees; (2) that these corporate entities would be solely responsible for payment of all wages to Plaintiffs; and (3) to indemnify Cenergy and Chevron against any loss arising out of the agreement. These MSAs were presented to Plaintiffs as-is with no negotiation, and signing the MSAs was a condition of working for Chevron through Cenergy. An indemnity provision contained in the MSAs required the following:

> Contractor [corporate entity] shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS [Cenergy] OR CIS CUSTOMER'S [Chevron] NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY,**

BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage.

(Doc. 1–1, p. 10; Doc. 1–2, p. 9; Doc. 1–3, p. 10.) The MSAs also contained an arbitration provision that requires all disputes be resolved through arbitration in Texas under the American Arbitration Association's "Construction Industry Rules":

Arbitration. All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

(a) Notice. In the event that a Dispute arises between Contractor and [Cenergy], and/or between Contractor and a [Cenergy] Customer, Contractor shall immediately notify [Cenergy] of such Dipuste in writing in order to provide [Cenergy] with an opportunity to informally resolve the Dispute.

(b) Mediation. In the event that the informal dispute resolution efforts set out in 21 (a) above fail to settle the Dispute between Contractor and [Cenergy] within 30–days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas in accordance with the AAA Energy Industry Rules for Mediation then in effect.

(c) Arbitration. In the event that the mediation fails to settle the Dispute, then, subject to Article 20(d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston, Texas. The arbitration shall be conducted in accordance with the International Institute for Conflict Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The arbitrator shall have the power to award reasonable attorney's fees, costs and expenses to the prevailing party in any such arbitration proceeding.

(Doc. 1–1, p. 11–12; Doc. 1–2, p. 8; Doc. 1–3, p. 11.)

On March 21, 2017, Cenergy sent a demand letter to Cummings Consulting, LLC ("CCLLC"), indicating it had become aware that "an employee of Cummings Consulting, LLC" (i.e., Plaintiff Donnie Cummings) had opted to be a member of the purported FLSA class action against Chevron pending before the U.S. District Court for the Northern District of California in case number 4:16–cv–02089–JSW. (Doc. 1–4, Exh. D, p. 2.) Cenergy advised CCLLC that, "pursuant to a separate agreement," Cenergy "may be obligated to defend and indemnify Chevron Corporation for any costs, expenses, or other dam-

ages sustained as a result of that lawsuit" and that Chevron had already demanded that Cenregy pay for legal fees and costs incurred in the defense of that FLSA lawsuit. (*Id.* at 4.) Citing the MSA agreement between CCLLC and Cenergy executed in January 2014, Cenergy demanded that CCLLC "reimburse [Cenergy] for any and all costs that it incurs or owes as a result of the Lawsuit," including any attorneys' fees, amounts reimbursed to Chevron, costs, penalties, damages, or any other losses. (*Id.*) Cenergy indicated it had already incurred $15,488.50 in costs and fees related to the FLSA lawsuit against Chevron, and demanded that CCLLC remit that amount within 15 days of the date of the demand letter. (*Id.*) If CCLLC failed to remit that amount within the 15–day window, Cenergy stated it would "take immediate action to enforce its rights under the MSA" and would initiate legal proceeds against CCLLC in Houston, Texas. (*Id.*)

On April 5, 2017, Plaintiffs filed suit in this Court, on behalf of themselves and all others similarly situated, seeking a declaration under 28 U.S.C. § 2201, the Declaratory Judgment Act ("DJA"), that Cenergy has no legal right to attempt to collect or obtain, through court or arbitration, the wages that Plaintiffs seek from Chevron or associated penalties, damages, and interest, or Chevron's or Cenergy's defenses costs, including attorneys' fees. Plaintiffs contend Chevron and Cenergy have improperly attempted to "contract around the FLSA" by insisting Plaintiffs pay, through their corporate entities, the wages Chevron is legally obligated to pay Plaintiffs under the FLSA and the costs of Chevron's defense in the separate FLSA collective action.

On May 1, 2017, Plaintiffs filed a motion for preliminary injunction asserting that Cenergy has commenced arbitration against Plaintiffs' corporate entities proceedings pursuant to the MSAs. Plaintiffs seek to enjoin those arbitration proceedings and to halt Cenergy from attempting to collect indemnification. On May 2, 2017, Cenergy filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A defendant may move for dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint, on its face, fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). If a plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

A jurisdictional challenge may be facial or factual in nature. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court determines whether the allegations in the complaint are facially sufficient to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Where the attack is factual, however, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotation marks and citations omitted); *accord Safe Air for Everyone*, 373 F.3d at 1039.

In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *See Safe Air for Everyone*, 373 F.3d at 1039; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' ... are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937. "[T]o be entitled to the presumption of truth, allegations in a complaint ... must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. 1955. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and*

*Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

### A. The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1331

The parties disagree whether the Court has subject matter jurisdiction over Plaintiffs' complaint seeking declaratory relief under the DJA. Plaintiffs maintain the declaration they seek arises from their rights under the FLSA, which confers federal-question jurisdiction under 28 U.S.C. § 1331. Cenergy argues that in the posture of this declaratory relief action, the FLSA arises only as a defense to Cenergy's indemnity action, and it does not confer subject matter jurisdiction under the well-pleaded complaint rule.

 Federal-question jurisdiction pursuant to 28 U.S.C. § 1331 arises in two situations. First, a court may exercise federal-question jurisdiction where a federal right or immunity is "an element, and an essential one, of the plaintiff's cause of action," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (internal citation and quotation marks omitted). Second, federal-question jurisdiction arises where a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

 To assess federal-question jurisdiction, courts apply the "well-pleaded complaint" rule under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 391–92, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "A defense is not a part of a plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).

 Assessing federal-question jurisdiction in declaratory relief actions is sometimes difficult. First, the DJA itself is not an independent source of federal law that provides jurisdiction. *Janakes v. U.S. Postal Serv.,* 768 F.2d 1091, 1093 (9th Cir. 1985) ("The use of the declaratory judgment statute does not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint brought without the use of 28 U.S.C. § 2201."). Second, if the declaratory relief action raises a federal issue only as a defense to a threatened coercive action, this will not supply federal-question jurisdiction. In other words, if the declaratory relief plaintiff would be unable to state a coercive claim under the federal law or substantial issue of federal law raised in the declaratory relief complaint, the federal law is a defense only and does not supply jurisdiction under the well-pleaded complaint rule. In such cases, the analysis shifts: "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action ... which will determine whether there is a federal-question jurisdiction in the District Court." *Public Serv. Comm'n v. Wycoff Co. Inc.,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952). To perform this analysis, courts essentially "reposition the parties in a declaratory relief action by asking whether [the court] would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy." *Standard Ins. Co. v. Saklad,* 127 F.3d

1179, 1181 (9th Cir. 1997); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–73, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Franchise Tax Board*, 463 U.S. at 19, 103 S.Ct. 2841 ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.").

■■■ Here, Plaintiffs seek a declaration of their rights under the FLSA, which they claim supplies a federal question for purposes of jurisdiction. The FLSA, however, is raised only as a defense to Cenergy's claim for indemnity under the MSAs. Plaintiffs have no coercive action under the FLSA that can be stated against Cenergy: there is no declaratory relief available under the FLSA itself, and Cenergy is not alleged to be Plaintiffs' employer, either solely or jointly. Under the factual circumstances presented in the complaint, the FLSA is raised only as a defense to Cenergy's demand for indemnity under the terms of the MSAs executed between Cenergy and Plaintiffs' corporate entities. The assertion of a federal defense does not confer subject matter jurisdiction. *Janakes*, 768 F.2d at 1093 ("A declaratory judgment plaintiff may not assert a federal question in his complaint if, but for the declaratory judgment procedure, that question would arise only as a federal defense to a state law claim brought by the declaratory judgment defendant in state court."). There is also no indication that any of the essential elements of Cenergy's contractual indemnity claim necessarily incorporate a substantial question of federal law. *See Grable*, 545 U.S. at 314, 125 S.Ct. 2363. Thus, repositioning the parties and

considering the nature of Cenergy's indemnity action does not establish federal-question jurisdiction in this case.

■■■ Plaintiffs assert the FLSA "completely" preempts any state-law indemnity cause of action by Cenergy. Although federal preemption is ordinarily only a defense that does not confer jurisdiction, the "complete preemption" doctrine is an exception to the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Complete preemption operates when the preemptive force of a statute is so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425.

■■■ The Supreme Court has not extended complete preemption to the FLSA, and this Court is unaware of any lower court recognizing such preemption. Rather, courts have concluded the FLSA has no complete preemptive force, reasoning that the statute itself contains no indication of express preemption, and neither the Act itself nor its legislative history reveals a manifest congressional intent to preempt state law claims. *See, e.g., Hurt v. Del Papa Dist. Co., L.P.*, 425 F.Supp.2d 853, 857 (S.D. Tex. 2004) (FLSA does not implicate complete preemption doctrine).[1]

---

1. *See also Fitzwater v. Manco Am.*, No. C-94-20321 (RMW), 1994 WL 809642 (N.D. Cal. Aug. 15, 1994) (holding FLSA does not completely preempt state law governing actions for wrongful termination in violation of public policy against retaliatory discharge); *Cuomo*

This is not to say that Cenergy's indemnity claims under the MSAs are not preempted by the FLSA in the ordinary sense—but ordinary preemption does not implicate the Court's subject matter jurisdiction.

In sum, Plaintiffs' declaratory relief action seeks a determination under the FLSA as a defense to Cenergy's coercive claim for contractual indemnity, which does not supply federal-question jurisdiction. Moreover, the FLSA does not implicate the complete preemption doctrine and does not transform Cenergy's coercive indemnity claim into one under federal law. As pled, there is no federal-question jurisdiction under the well-pleaded complaint rule, and the Court lacks subject matter jurisdiction over this action. Nonetheless, Plaintiffs argue diversity jurisdiction exists, and they seek leave to amend their complaint to allege subject matter jurisdiction under 28 U.S.C. § 1332.

## B. Complaint Lacks Allegations Sufficient to Establish Plaintiffs' Standing

Plaintiffs seek a declaratory judgment regarding the enforceability of an indemnity provision of contracts between Cenergy and Plaintiffs' corporate entities, and a judgment that Cenergy may not force Plaintiffs and those similarly situated to arbitrate in Texas under the Construction Industry Rules. (Doc. 1, p. 9.) Cenergy moves to dismiss the suit arguing Plaintiffs lack standing to challenge the enforceability of the MSAs because they are neither parties nor third-party beneficiaries under these agreements.

To bring suit in a federal court, a plaintiff must establish standing under the "case or controversy" requirement of Article III to the U.S. Constitution. *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). Standing is an essential element of federal-court subject matter jurisdiction and involves both constitutional requirements derived from Article III and judicially created prudential limitations. *South Lake Tahoe v. California Tahoe*, 625 F.2d 231, 233 (9th Cir. 1980); *United States v. Mindel*, 80 F.3d 394, 396 (9th Cir. 1996). The "irreducible constitutional minimum of standing" contains three requirements: (1) an "injury in fact"—a harm suffered by the plaintiff that is concrete and particularized, actual and imminent, not hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is traceable to the challenged action of the defendant; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Generally, a plaintiff who is neither a party nor a beneficiary to a contract lacks standing to enforce or challenge the enforceability of its terms. *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 n.2 (9th Cir. 1987).

### 1. Injury to Plaintiffs in their Individual Capacities Not Sufficiently Alleged

Plaintiffs first argue their action for declaratory relief arises "under the FLSA, not under contract." As the Court understands Plaintiffs' argument, Plaintiffs contend Cenergy's indemnity claim abridg-

---

*v. Dreamland Amusements, Inc.*, No. 08 CIV. 7100 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) (holding FLSA does not completely preempt state labor laws); *Mickle v. Wellman Prods. LLC*, No. 08-CV0297-CVE-PJC, 2008 WL 3925266 (N.D. Okla. Aug. 20, 2008) (holding that "FLSA does not completely preempt state law claims" such that any claim seeking unpaid overtime compensation is inherently federal in nature).

es Plaintiffs' rights under the FLSA because Chevron has created a scheme to contractually shift its FLSA liability to its alleged employees (Plaintiffs) through Cenergy, something Plaintiffs maintain Chevron it is not permitted to do under the FLSA. Plaintiffs further contend that because their rights under the FLSA are impaired by Chevron shifting liability to them through Cenergy's indemnity claim, they have standing to challenge the enforceability of the contract between Cenergy and Plaintiffs' corporate entities. Plaintiffs assert this scheme by Chevron and Cenergy is intended to "contract around" Plaintiffs' individual rights under the FLSA, and urge the Court to consider the standing inquiry from the perspective of the injuries to Plaintiffs' FLSA rights rather injuries accruing only to Plaintiffs' corporate entities under the MSAs.

Even if the FLSA applied to Plaintiffs' employment relationship with Chevron, however, Plaintiffs still have not established how they would be injured in their individual capacities. Cenergy seeks indemnity from Plaintiffs' corporate entities, not from Plaintiffs in their individual capacities. Cenergy's indemnity claim might be precluded if the FLSA attaches to Chevron's relationship with Plaintiffs, but it is the corporate entities who have standing to challenge Cenergy's indemnity claim, not Plaintiffs in their individual capacities. Although the complaint alleges Cenergy has threatened to pursue claims against "Plaintiffs" (see Doc. 1, ¶ 35), the complaint also states that Cenergy made a demand to "Plaintiffs" for reimbursement of Chevron's defense costs. Cenergy's demand letter, however, is attached to the complaint and unequivocally makes a demand on Plaintiffs' *corporate entities*, not Plaintiffs as individuals. The complaint does not clearly articulate a threat of litigation against Plaintiffs in their individual capacities, which would have given rise to standing.[2]

### 2. Insufficient Allegations to Establish Plaintiffs Are Third–Party Beneficiaries

■ Plaintiffs also contend they are third-party beneficiaries of the MSAs, establishing standing to challenge the enforceability of the MSAs. Plaintiffs note Cenergy required Plaintiffs to sign the MSAs in order to perform work for Chevron, the MSAs were not negotiable, Plaintiffs each personally signed the MSAs and were the workers who were ultimately paid under the contracts, and each MSA expressly stated it was "binding upon any . . . representatives of the parties hereto." Cenergy argues Plaintiffs cannot be deemed third-party beneficiaries to the MSAs because there is no language or expressed intent in the MSAs showing Plaintiffs were meant to benefit from the agreements.

■ A third party may qualify as a beneficiary under the contract where the contracting parties have intended to benefit that third party and such intent appears on the terms of the contract. *Ascherman v. Gen. Reinsurance Corp.*, 183 Cal.App.3d 307, 311, 228 Cal.Rptr. 1 (1986). It is well settled, however, enforcement of a contract by persons who are only incidentally or

---

**2.** Attached to Plaintiffs' motion for a preliminary injunction are email correspondence between Cenergy's and Plaintiffs' respective counsel, which occurred after the complaint was filed. There is suggestion of a lawsuit against Plaintiffs in their individual capacities that may give rise to standing were it pled in the complaint. (Doc. 6–3, p. 75–76.) *Newcal Industries, Inc. v. IKON Office Solution*, 513 F.3d 1038, 1056–57 (9th Cir. 2000) (third party can obtain standing to challenge contract enforceability where threatened with suit).

remotely benefitted by it is not permitted. *Lucas v. Hamm*, 56 Cal.2d 583, 590–91, 15 Cal.Rptr. 821, 364 P.2d 685 (1961) ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. . . ."). While intent is pivotal, there is no requirement that "both of the contracting parties must intend to benefit the third party. . . ." *Schauer v. Mandarin Gems of Cal. Inc.*, 125 Cal. App.4th 949, 958, 23 Cal.Rptr.3d 233 (2005). Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract is predicated on the parties' intent, which is gleaned from reading the contract as a whole in light of the circumstances under which it was entered. *Walters v. Marler*, 83 Cal.App.3d 1, 33, 147 Cal.Rptr. 655 (1978).[3]

While Plaintiffs note they each signed an MSA, Plaintiffs' signatures on the MSAs were not made in their individual capacities—they each signed as the representative of their respective corporate entity. (*See* Doc. 1–1, p. 13; Doc. 1–2, p. 11.)[4] The language of the MSA binding "representatives" of the parties is also not evidence of third-party beneficiary status. This language was contained in a "Survival of Covenants" clause, and Plaintiffs cite no law for the proposition that a survival clause such as this binds Plaintiffs in their individual capacities, making them personally liable under the MSAs or otherwise shows they were intended to benefit from the contracts. And, although Plaintiffs were the workers ultimately paid under the contracts, this alone does not show they were more than incidental beneficiaries of the MSAs. There are simply insufficient facts alleged to show that the MSAs were intended to benefit Plaintiffs to consider them third-party beneficiaries.

Plaintiffs also cite several California cases for the broad proposition that employee classes are third-party beneficiaries of contracts between their employers and other entities. *See Amaral v. Cintas Crop. No. 2*, 163 Cal.App.4th 1157, 1193, 78 Cal. Rptr.3d 572 (2008); *Tippett v. Terich*, 37 Cal.App.4th 1517, 1533, 44 Cal.Rptr.2d 862 (1995); *Dep't of Industrial Relations, Div. of Labor Standards Enf't v. Fid. Roof Co.*, 60 Cal.App.4th 411, 426, 70 Cal.Rptr.2d 465 (1997). If Plaintiffs are considered employees of their respective corporate entities, Plaintiffs assert these cases indicate they are third-party beneficiaries of the MSAs between Cenergy and the corporate entities. *Amaral, Tippet,* and *Fidelity Roof Co.*, however, are distinguishable and do not stand for the broad proposition Plaintiffs urge. As Cenergy notes, these cases involved public works contracts where a statutory prevailing wage provision, which required payment of higher wages, was inserted for the express benefit of the employees of the contractor. *See Amaral, Tippet, Fidelity Roof Co., supra.* The prevailing wage law was enacted to benefit employees, and the employees working on the public works projects were thus intended beneficiaries of the wage provision. Including the prevailing wage provision in the contract was express evidence of the parties' intent to benefit the contractor's employees, rendering them third-party beneficiaries of those contracts. Here,

---

**3.** To sue as a third-party beneficiary of a contract under federal law, the analysis is the same: the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *See Klamath Water Users Pro-* *tective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

**4.** The copy of the contract between Drilling Consultants, Inc. and Cenergy attached to the complaint is not signed. (Doc. 1–3, p. 13.)

there is no similar provision in the MSAs that is for the express benefit of those who performed the work on behalf of Plaintiffs' corporate entities. For these reasons, Plaintiffs have not adequately alleged standing as third-party beneficiaries.

## C. Plaintiffs' Claim for Declaratory Relief is Viable

■ Because the jurisdictional defects identified above appear curable and in the interest of efficiency, the Court addresses the Fed. R. Civ. P. 12(b)(6) attack upon Plaintiff's declaratory relief claim. Cenergy argues the FLSA does not apply to its contracts with Plaintiffs' corporate entities because Plaintiffs do not allege that Cenergy was their employer or that they were employees of Cenergy. According to Cenergy, the FLSA only applies to employers and employees, and any prohibition on seeking indemnity for FLSA liability does not pertain to Cenergy. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468 (9th Cir. 1983) (finding that in order for the FLSA to apply, the defendant must be an "employer" within the meaning of the FLSA). As such, Cenergy argues Plaintiffs cannot obtain a declaration against Cenergy under the FLSA.

■ Cenergy's argument is unpersuasive as it interprets Plaintiffs' claim for declaratory relief too narrowly. First, although Plaintiffs lack a viable coercive claim against Cenergy under the FLSA (due to a lack of an alleged employer-employee relationship between Plaintiffs and Cenergy), this alone does not preclude Plaintiffs from seeking a declaration regarding the enforceability of Cenergy's indemnity claim in relation to Plaintiffs' rights under the FLSA. Often, a declaratory relief plaintiff brings an issue before the

court that might otherwise need to await a coercive action brought by the declaratory relief *defendant. Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) ("[The Declaratory Judgment Act] brings to the present a litigable controversy, which otherwise might only by [sic] tried in the future.").

Second, Plaintiffs' theory of the invalidity of Cenergy's indemnity claim under the FLSA is, at this stage, theoretically viable.[5] Although not yet expressly decided by the Ninth Circuit, several circuit courts have determined there is no right to contribution or indemnification for employers held liable under the FLSA. *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986). As noted above, the prohibition on indemnification and contribution exists regardless of the status of the party from whom it is sought—be it a co-employer, an employee, or other third-party, *See Herman*, 172 F.3d at 143. Moreover, claims for indemnification arising under state law or under express contractual provisions have been held to be preempted by the FLSA where the FLSA is applicable. *See, e.g., id.; Gustafson v. Bell Atlantic Corp.*, 171 F.Supp.2d 311, 328 (S.D.N.Y. 2001) (permitting employer to seek contractual indemnity for FLSA liability flouts the purpose of the statute).

Pursuant to this case law, Plaintiffs contend that if Chevron is deemed Plaintiffs' employer under the FLSA—as Plaintiffs allege—then Chevron's claim for indemni-

---

5. This conclusion is predicated on Plaintiffs' ability to cure the defects as to standing and jurisdiction.

ty against Cenergy is prohibited, which extinguishes or invalidates Cenergy's indemnity claim against Plaintiffs' corporate entities under the MSAs because it arises from Chevron's indemnity claim.[6] Cenergy cites several district court decisions allowing indemnity claims to proceed at the pleading stage where the purported employers claimed the workers from whom they were seeking indemnity were independent contractors and not employees.[7] *See, e.g., Jones v. Henry Indus., Inc.,* 2017 WL 513038 (E.D. Mo. Feb. 8, 2017); *Spellman v. Am. Eagle Express, Inc.,* 680 F.Supp.2d 188, 189–92 (D.D.C. 2010). Cenergy asserts these cases indicate indemnity is only prohibited by an employer against an employee; as Plaintiffs have not alleged an employee-employer relationship with Cenergy, the FLSA does not bar Cenergy's contractual indemnity claim, even if Plaintiffs were considered employees of Chevron.

The courts in *Jones* and *Spellman* were evaluating the viability of a purported employer's indemnity claim at the pleading stage. The courts reasoned the indemnity claim was only invalid if the FLSA applied to the employment relationship, and the complaints for indemnity had adequately alleged the FLSA did *not* apply because the workers were independent contractors. Because it was not yet determined whether the FLSA applied, the indemnity claims were allowed to proceed. These cases do not, however, stand for the proposition that an employer is prohibited from seeking indemnity only from an employee. The

Second Circuit concluded in *Herman* there is no right to indemnity under the FLSA, regardless of the status of the one from whom indemnity is sought. 172 F.3d at 143. In *Jones* and *Spellman* it was the applicability of the FLSA on which the viability of the indemnity claims was predicated, not the status of the person from whom the purported employer sought indemnity. Considering *Jones, Spellman,* and *Herman* together, if the FLSA applies there is a colorable argument here that Chevron may not shift any liability or costs arising from Plaintiffs' FLSA lawsuit to any other entity or person, either by virtue of the FLSA itself or by separate contractual agreement. *Gustafson,* 171 F.Supp.2d at 328 ("Allowing indemnification [against a purported joint-employer] would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute.").

If Chevron is deemed to be Plaintiffs' employer, Plaintiffs contend Chevron's claim for indemnity is invalid under the FLSA, and Cenergy's claim for indemnity, stemming from Chevron's allegedly impermissible indemnity demand, is extinguished and/or is itself invalid as flouting the purpose of the FLSA. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to ef-

---

6. *See* Doc. 1–4, p. 4 ("Cenergy hereby advises CCLLC that, pursuant to a separate agreement, it may be obligated to defend and indemnify Chevron Corporation for any costs, expenses and other damages sustained as a result of the [FLSA] lawsuit.").

7. In *Bogosian v. All Am. Concessions,* No. 06-cv-1633-RRM-RML, 2011 WL 4460362 (E.D.N.Y. Sept. 26, 2011), indemnity was per-

mitted against an alleged joint employer pursuant to a contractual indemnity provision after settlement of the workers' FLSA claims. In that case, however, there was no court determination whether the FLSA actually applied due to the settlement—thus, there was no FLSA application upon which to bar indemnity, and the matter was simply one of contract application in light of the settlement.

fectuate"). For the same reasons that the purported employers' indemnity claims in *Jones* and *Spellman* could not be held invalid at the pleading stage, Plaintiffs' request for a declaration regarding the enforceability of the MSAs cannot be deemed invalid as Plaintiffs have sufficiently alleged the FLSA applies to their employment relationship with Chevron. This theory appears viable under the relevant case authority, and Plaintiffs' request for declaratory relief is therefore cognizable at this stage.[8]

## D. The Amended Complaint Must Address Procedural Issues

Although Plaintiffs appear to state a theoretically viable theory for declaratory relief, the Court has concerns about several procedural aspects of this case that must be addressed in connection with any amended complaint. First, the Court makes no determination as to the propriety of Plaintiffs seeking declaratory relief under the DJA as a collective action under 29 U.S.C. § 216(b)—*i.e.*, whether the FLSA is the appropriate procedural vehicle to pursue a representative action. As Plaintiffs' alleged employer (Chevron) is not a party to this case and Cenergy is not alleged to be Plaintiffs' employer, whether an FLSA collective action can proceed against Cenergy alone is questionable. Second, it is not clear to the Court whether Chevron must be joined to this litigation as a necessary party pursuant to Federal Rule of Civil Procedure 19. The practical effect of the declaration Plaintiffs seek is to invalidate any indemnity Chevron seeks against Cenergy stemming from the FLSA collective action pending in the Northern District of California. Finally, the Court is forced to consider whether this case should

be related to the collective action pending in the Northern District, such that similar issues may be decided by the same judge.

## E. Conclusion

For the reasons discussed above, there is no federal-question jurisdiction over Plaintiffs' complaint and Plaintiffs lack standing to challenge the enforceability of the MSAs between Cenergy and Plaintiffs' corporate entities. Therefore, Cenergy's motion to dismiss under Rule 12(b)(1) is GRANTED. Because these deficiencies appear curable, however, Plaintiffs may file an amended complaint within 14 days from the date of this order. Any amended complaint must address the procedural issues outlined above. Plaintiffs' motion for a preliminary injunction is held in abeyance pending amendment of the complaint. *See, e.g., Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F.Supp.2d 839, 842 (D. Alaska 2012) (district court may not grant preliminary injunction if it lacks subject matter jurisdiction over the claim before it).

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Cenergy's Motion to Dismiss is GRANTED;

2. Plaintiffs' complaint is dismissed with 14-days leave to amend; and

3. Plaintiffs' Motion for a Preliminary Injunction is held in abeyance pending amendment of the complaint.

IT IS SO ORDERED.

---

8. Even assuming Chevron were determined to be Plaintiffs' employer and the FLSA applied, the Court takes no position on whether there are damages, costs, or expenses separate from any FLSA liability for which Cenergy could seek indemnity under the MSAs.